56 A.3d 787

**Carlton Everette JOYNER**

v.

**STATE of Maryland.**

No. 1173, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Nov. 29, 2012.

Michael R. Braudes (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Robert Taylor, Jr. (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: KEHOE, BERGER and LAWRENCE F. RODOWSKY, (Retired, Specially Assigned), JJ.

BERGER, J.

A jury in the Circuit Court for Prince George's County convicted Carlton Everette Joyner, appellant, of possession with intent to distribute marijuana and possession with intent to distribute cocaine. The trial court sentenced appellant on July 15, 2011, imposing concurrent sentences of four and five years respectively.

Appellant filed a timely appeal and presents the following questions:

    1.  Did the trial court err in denying Appellant's motion to suppress his statement to police?

2. Did the trial court fail to properly exercise discretion, or in the alternative abuse its discretion, in refusing to permit a defense witness to testify?

3. Did the trial court err in permitting Nicole Edwards to testify as an expert when the State failed to disclose her as such in discovery?

4. Did the trial court err in permitting the State to play an audiotape of alleged telephone calls from prison by Appellant in the absence of proper authentication?

For the reasons set forth below, we shall affirm the judgments of conviction.

## BACKGROUND [1]

### *Hearing on Motion to Suppress*

Appellant filed a pre-trial motion to suppress pursuant to Md. Rule 4–252. A hearing on this motion was conducted, at which Detective Kevin McConnell of the D.C. Metropolitan Police Department testified.[2] Detective McConnell testified that on November 4, 2010, members of a drug enforcement task force executed a search warrant at 825 Marcy Avenue in Oxon Hill, and recovered crack cocaine, marijuana and associated paraphernalia.[3]

Appellant gave a statement while in police custody, and the appellant moved to suppress his statement. At the hearing on

---

1. Appellant does not challenge the sufficiency of the evidence. We, therefore, limit our recitation of the facts to provide a context for the discussion of the issues before us. *See Washington v. State*, 180 Md. App. 458, 461–62 n. 2, 951 A.2d 885 (2008) (recitation of full record unnecessary because no challenge made to sufficiency of evidence); *Singfield v. State*, 172 Md.App. 168, 170, 913 A.2d 671 (2006), *cert. denied*, 398 Md. 316, 920 A.2d 1060 (2007); *Martin v. State*, 165 Md.App. 189, 193, 885 A.2d 339 (2005), *cert. denied*, 391 Md. 115, 892 A.2d 478 (2006).

2. Detective McConnell was a member of a multi-agency ATF task force.

3. Detective McConnell was the affiant who applied for the search warrant based on a tip from a confidential informant. He testified that the informant had revealed that individuals were selling narcotics in the 8900 block of Marcy Avenue, Oxon Hill.

the pre-trial motion to suppress, Detective McConnell's testimony provided the context in which the statement was given:

[DEFENSE COUNSEL]: It says here at 8:24 on November 4th, 8:24 in the morning, Mr. Joyner was advised of his rights. How did you ascertain that that was the time?

[THE WITNESS]: We were in the process of transporting Mr. Joyner to the correctional facility and we were in an unmarked vehicle. My partner, [an] ATF Special Agent ... was driving. Mr. Joyner and I were seated in the back seat. He was handcuffed. And en route, he started the conversation. I stopped him as he began to speak, you know, thinking that he was going to give some information, and I wanted to do things properly. So I stopped him, advised him of his rights and noted the time on my Sprint telephone. So it was approximately 8:24 hours.

[DEFENSE COUNSEL]: Now, there's an arrest report here in which they report that you are the arresting officer?

[THE WITNESS]: Yes, sir.

[DEFENSE COUNSEL]: A Prince George's County report. And they're saying the time of the arrest was 8:26 in the morning.

[THE WITNESS]: Okay. Like I said, it was approximate. I wasn't familiar with the P.G. County computer system that was operating, and I had one of the correctional officers ... that was assisting me.

* * *

THE COURT: I think we moved from the search warrant to the statement. And the issue is what time was the statement given.

[THE WITNESS]: The statement was given in the car on the way to transporting. The arrest paperwork was filled out at the correctional facility some time later after 8:50 hours, because that's what time that pretty much the conversation stopped in reference to me advising him of his rights and him making statements to me.

[DEFENSE COUNSEL]: Now, was there any attempt made to get a written waiver from Mr. Joyner?

[THE WITNESS]: Like I said, he was handcuffed in a vehicle that was equipped to transport prisoners. It was just a four door unmarked sedan.

And while we were doing the arrest paperwork at the computer terminal, after we set down at the terminal, we had no more contact with Mr. Joyner. He was off being processed.

[DEFENSE COUNSEL]: I see. So, basically, did anybody else witness these statements besides you?

[THE WITNESS]: Myself and Special Agent [ ] with the ATF.

[DEFENSE COUNSEL]: He is not available today, I take it?

[THE WITNESS]: No, he isn't, sir.

[DEFENSE COUNSEL]: Now, you have various comments written down here, and some of them that could be termed as incriminating.

[THE WITNESS]: Yes, sir.

On cross-examination by the prosecutor, Detective McConnell explained how appellant was advised:

Just verbally. I stated to him basically stating the obvious, that he's in handcuffs, being transported, he's under arrest. He's not free to go, and that he had a right to remain silent. Anything he said could be used against him in court. He has a right to an attorney. If he wants to talk to us now and answer questions, he can do so. He can stop answering at any time. Just, you know, just verbally. Also, that if he started answering questions and got to a question that he didn't want to answer, we would just move on. Or we might not have any questions for him at all and he can just tell me what happened today and what brought him here.

Detective McConnell testified that appellant had no questions about his rights, and that he had never asked to speak

with an attorney. Appellant responded affirmatively when the Detective McConnell asked whether he understood everything. The detective also raised the possibility of cooperation:

When I had finished up at approximately 8:50 hours, I told him at some later point in time, if he wanted to get with his attorney and do some work for us, his attorney will get with the State's Attorney and maybe we could work something out.

On re-direct examination by defense counsel, Detective McConnell emphasized that his recitation of the *Miranda*[4] rights "covered all the major points." He was certain of this because he's "read it several times. I know you don't have to—it doesn't have to be read verbatim, but you do have to cover all the major points in it. It doesn't have to be done in any specific order. You just have to cover all the bases."

After the detective's testimony, defense counsel maintained that the appellant's statements to the detectives should be suppressed. Defense counsel argued that:

Regarding the statements of Mr. Joyner, Mr. Joyner was not asked to—was not asked at any point in time for any kind of written waiver, although that is the normal course definitely for the authorities in this area, in Prince George's County. And anybody who would be acting on their behalf, which I'm taking this task force to be acting in their behalf. And that's the standard that tells us that somebody has intelligently waived their rights.

Secondly, the fact is even Detective McConnell admits—I hope I got that right—admits that the statements themselves were not delivered in a classic form that had been approved by authorities but, instead, were given more or less in a more informal manner, perhaps sounding somewhat piecemeal and without any real assurance that they were all given or that Mr. Joyner would have known what exactly he was doing, nor that he would have received a

---

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

warning that would have made him realize that the things he was saying were being recorded.

And I think the fact is the testimony did indicate at some point he talked about contact with President Obama, which indicated the lack of seriousness with which he was holding the conversation.

For that reason, I submit that Mr. Joyner did not have an intelligent waiver of his rights, and we ask the Court to suppress the statements he made that the state now wish to use against him.

Following argument from the prosecutor, defense counsel added:

Your Honor, just that I think the procedural safeguard is really what we're arguing herein that what Prince George's County has found to be a proper procedural safeguard was not followed in this case. And basically what we're saying is that we have to take the word of a person and that proper procedures which would assure us that the protections were provided have not been followed in both cases. Both in the deliverance of any possible Miranda-style warning[.]

The motions court denied appellant's motions to suppress. The court explained its ruling as follows:

As for the statements made in the back of the police car, while not exactly a blurt, in fact not a blurt, it may have started out that way. Eventually, the advisement to the defendant who apparently was not the first time he heard those words, certainly not on TV, understood clearly what he was saying. And when the police detective began writing it down, he got a little apprehensive and stopped. Outside of that, I see no legal reason whatsoever to grant the motion to suppress at this point.

### Trial Testimony

Shawn Arthur testified as an agent for the Bureau of Alcohol, Tobacco and Firearms ("BATF"). He was on duty on November 4, 2010 at about 6:00 a.m., participating in the execution of a search warrant at 825 Marcy Avenue, Apart-

ment T–3, in Oxon Hill. Agent Arthur recounted that, upon entering the apartment he encountered appellant and "took [him] into custody." The agent then searched the hallway closet and the kitchen area, and recovered $600 in United States currency from the pocket of an Eddie Bauer winter coat. He also located a digital scale on the top right shelf of a kitchen cabinet.

James Harris testified as an Agent with the D.C. Metropolitan Police Department. Agent Harris also participated in the execution of the search warrant at the apartment where the appellant was arrested. Appellant was the only adult male in the apartment when Agent Harris entered, although there was a woman and children present. He located "multiple empty Ziploc bags" and discovered an additional Ziploc bag in a breadbox on the top of the refrigerator that contained what Agent Harris thought was a substance that smelled like marijuana.

Officer Jaime Dega testified as a member of the D.C. Metropolitan Police Department. Officer Dega was also involved in the execution of the warrant at the Marcy Avenue. He searched the master bedroom of the house and uncovered a loaded rifle magazine from a drawer in the dresser.

Kevin McConnell testified as a member of the D.C. Metropolitan Police Department.[5] He participated in the execution of the search warrant on November 4, 2010 at 825 Marcy Avenue. The warrant had been issued for the search for and seizure of marijuana. He first saw appellant when he, along with a Ms. Walker, was coming out of the larger of two bedrooms in the rear of the apartment. There was an infant in a crib in that bedroom, and two other children. Detective McConnell took the infant out of the crib, and returned to that bedroom, where he found a large paper shopping bag sitting on a small table. He testified that the "bag was open" and that it contained a "[g]reen weedish substance wrapped up in

---

5. Detective McConnell testified that he works as a MPD detective. He will be referred to with this title.

smaller zips, and a white rock substance and even smaller Zips packaged up." The small bags contained marijuana and what appeared to be a "white rock substance." There was "money on the table" in the larger bedroom and "another Ziploc of green weed substance[.]" According to Detective McConnell, "[i]t was all surrounding the shopping bag with the green weed substance and the Ziplocs and the smaller things."

The police transported appellant to the police station. Detective McConnell rode with him in an unmarked car and advised appellant of his rights. Appellant made some statements during this interval, and initially admitted that the drugs were his. Detective McConnell testified that when police questioned him in the house, appellant had given them a false name because he "had a probation warrant." Appellant also admitted to Detective McConnell that he was "just selling it." He also acknowledged that the jacket from which the $600 in currency had been recovered, as well as the money, belonged to him.

Special Agent William Smith serves with the BATF, and assisted in the execution of the search warrant at the Marcy Road apartment on November 4. He seized what appeared to be marijuana and crack cocaine that was discovered in the apartment. Baggies of marijuana and a brown paper bag that contained marijuana were recovered from a "master bedroom TV stand."

The State then called Nicole Edwards to the stand. Ms. Edwards is a senior forensic chemist with the Drug Enforcement Administration. Over objection, Ms. Edwards was accepted as an expert in forensic chemistry. Based on the analyses she performed, Ms. Edwards concluded that the contraband that had been recovered consisted of cocaine base and marijuana.

Officer Christopher Schultz, who was accepted as an expert in "identification, packaging, valuation, [and] distribution for crack cocaine and marijuana," also testified. Having reviewed the evidence, he concluded that it "is indicative of possession

with the intent to distribute both the marijuana and the crack cocaine."

We shall recite additional facts as appropriate.

## DISCUSSION

### I.

■ Appellant first questions the motions court's denial of his motion to suppress the statement he made to Officer Kevin McConnell. He maintains that the motions court erred because the record does not establish that Officer McConnell advised him that he would be entitled to appointed counsel at no expense. The State counters that appellant has failed to preserve this issue because it had not been raised below. We agree with the State and explain.

In *Carroll v. State*, 202 Md.App. 487, 32 A.3d 1090 (2011), *aff'd on other grounds*, 428 Md. 679, 53 A.3d 1159 (2012), this Court ruled that the defendant in that case, Carroll, had waived his claim that the circuit court erred by refusing to suppress his post-arrest statements. Carroll's attorney originally filed a pre-trial motion pursuant to Md. Rule 4–252(a), but then withdrew his challenge to the admission of the disputed statements. We declined to review this issue because Carroll had waived it. Our explanation merits extensive quotation:

Pursuant to Md. Rule 4–252(a), a claim regarding "[a]n unlawfully obtained admission, statement, or confession," "shall be raised by motion" prior to trial, and if not so raised, it is waived, absent a showing of good cause. This Court has explained that a failure to raise a suppression issue below constitutes a waiver in several contexts: (1) if the defendant fails to comply with the time requirements for filing a motion under the rule; (2) if the defendant files a notice but fails to pursue it; and (3) if there is a hearing on the motion, but the defendant fails to present any grounds to support the motion. *Jackson v. State*, 52 Md.App. 327, 331–32, 449 A.2d 438, *cert. denied*, 294 Md. 652 (1982). *Accord Perry v. State*, 344 Md. 204, 227, 686 A.2d 274 (1996)

(defendant waived suppression issue by failing to raise it prior to trial), *cert. denied,* 520 U.S. 1146, 117 S.Ct. 1318, 137 L.Ed.2d 480 (1997). Neither party cites a case addressing whether plain error review applies in the context of the failure to raise a suppression issue subject to the rule.

In *Kohr v. State,* 40 Md.App. 92, 98, 388 A.2d 1242, *cert. denied,* 283 Md. 735 (1978), this Court stated that the Court of Appeals decided, "as a matter of judicial policy," to make Rule 736, the predecessor to Rule 4–252, parallel to Rule 12 of the Federal Rules of Criminal Procedure ("FED. R.CRIM. P."). We stated: "Both rules are identical in that they require that motions to suppress be filed pre-trial and both consider a failure to raise timely objections to the admissibility of unlawfully seized evidence to constitute a waiver." *Id.*

Because the Maryland rule is parallel to the federal rule, we look to federal decisions addressing the effect of a failure to raise a suppression issue pursuant to FED.R.CRIM.P. 12. Several courts have analyzed in detail whether such a failure constitutes: (1) a forfeiture subject to plain error review; or (2) a waiver that cannot be reviewed absent good cause.

*Carroll,* 202 Md.App. at 509–11, 32 A.3d 1090 (footnotes omitted).

It is noteworthy that while Carroll had withdrawn his challenge to the admission of the statements in that case, we also concluded in that case that the failure to advance a specific argument before the circuit court would likewise foreclose appellate review. We surveyed several federal cases that interpreted the federal analogue to Rule 4–252(a), FED. R.CRIM.P. 12, and concluded that "if a defendant fails to raise a ground seeking suppression of evidence, which is required to be raised pre-trial by Rule 4–252, the defendant has waived his or her right to appellate review of that issue." *Carroll,* 202 Md.App. at 513, 32 A.3d 1090. We thus made no distinction between waiver or forfeiture of an issue.

■ It is long-established that "[f]orfeiture is the failure to make a timely assertion of a right, whereas waiver is the 'intentional relinquishment or abandonment of a known right.'" *Savoy v. State,* 420 Md. 232, 240, 22 A.3d 845 (2011) (quoting *State v. Rich,* 415 Md. 567, 580, 3 A.3d 1210 (2010) (in turn quoting *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993))). In the usual case, a forfeited objection could still be the subject of plain error review, while an issue that had been waived results in procedural default in every instance. Unlike the situation in *Carroll,* where the defense withdrew a suppression challenge, appellant in this case failed to assert a specific argument that he now advances on appeal.[6] The issue of forfeiture is squarely before this Court, and thus a review of selected authorities that are relevant to this issue is useful.

In *United States v. Rose,* 538 F.3d 175 (3d Cir.2008), Judge Thomas Ambro introduced the Third Circuit's discussion of this aspect of procedural default:

This case raises a procedural issue that has nagged our Court for decades and for which we have unwittingly given

---

6. Arguably, this Court's conclusion in *Carroll v. State,* 202 Md.App. at 513 (2011), *aff'd on other grounds,* 428 Md. 679, 53 A.3d 1159 (2012), pertaining to the denial of appellate review for a "fail[ure] to raise a ground seeking suppression of evidence," may be considered to be judicial *dicta.* As such, it is entitled to singular deference. As Judge Raker recited in a separate opinion in *State v. Baby,* 404 Md. 220, 272, 278–79, 946 A.2d 463 (2008):

The line between dicta and holding is further clouded by the presence of a middle ground, labeled judicial dicta. Judicial dictum is generally defined as an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision. Statements of judicial dicta are technically 'dicta' because they are not necessary to the holding of a case. They do not, however, implicate to the same degree as ordinary dicta the concern of full consideration, which is one of the rationales for treating dicta and holdings differently. Unlike ordinary dicta, judicial dicta is, by definition, well-reasoned and stated only after the court has investigated an issue with care. Accordingly, courts afford judicial dicta greater deference than ordinary dicta, treating judicial dicta almost like holdings.

(quoting David Coale & Wendy Couture, *Loud Rules,* 34 Pepp. L.Rev. 715, 727–28 (2007)) (internal quotations omitted).

conflicting answers: whether a criminal defendant who failed to raise a reason to suppress evidence before the District Court may raise the reason on appeal. We conclude that he cannot absent good cause: such a suppression issue is waived under Federal Rule of Criminal Procedure 12, which trumps Rule 52(b)'s plain error standard in the context of motions to suppress. For this reason and others, we affirm the conviction of Larken Rose for five counts of failure to file personal income tax returns.

*United States v. Rose,* 538 F.3d 175, 176 (3d Cir.2008).

Rose had been convicted of failure to file personal income tax returns. Acting *pro se,* Rose moved to suppress physical evidence that had been seized during a search of his home, and offered four grounds for his challenge before the district court. Represented by counsel on appeal, Rose advanced different contentions. These theories differed from those urged in the district court, and, as noted by the Third Circuit, "[a]ll of the suppression issues that Rose raises on appeal are new[.]" *Rose,* 538 F.3d at 177. The court of appeals explained why it would not entertain Rose's new appellate assertions:

> In our Court, suppression issues raised for the first time on appeal are waived absent good cause under Rule of Criminal Procedure 12. Although a few of our opinions have inadvertently applied plain error review under Rule of Criminal Procedure 52(b), for the reasons stated below, we do not find these cases to be controlling. Further, the Criminal Rules' text, their history, and pertinent policy considerations direct a waiver approach. Thus, a suppression issue not raised in the District Court is waived absent good cause, and we accordingly affirm.

*Rose,* 538 F.3d at 177 (citations omitted). The court considered FED.R.CRIM.P. 12(b)(3), which, like Md. Rule 4–252(a), lists certain motions that must be made before trial, and FED.R.CRIM.P. 12(e), which governs waiver as a consequence for a party's failure to advance a timely Rule 12(b)(3) mandatory motion. The Third Circuit addressed the tension be-

tween the Rule 12(e) waiver provision and the federal plain error rule, FED.R.CRIM.P. 52(b), holding that the specific waiver provision of Rule 12 controls a party's failure to file a mandatory Rule 12(b)(3) motion *or* advance an argument below that is congruent with its appellate claim:

Though each of Rule 52(b) and Rule 12 appears applicable when read alone, when considered together we believe Rule 12's waiver provision must prevail. The latter is much more specific than is Rule 52(b); while Rule 52(b) states generally that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention," Rule 12(e) singles out motions to suppress, stating that a "party waives any [suppression] defense, objection, or request not raised by the [pretrial] deadline the court sets." (Emphasis added.) In this context, "we apply the well-settled maxim that specific statutory provisions prevail over more general provisions." *Chavarria v. Gonzalez,* 446 F.3d 508, 517 (3d Cir.2006) (internal quotation marks omitted). Thus we avoid "applying a general provision when doing so would undermine limitations created by a more specific provision." *Varity Corp. v. Howe,* 516 U.S. 489, 511, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

Rose counters that Rule 12's use of the term "waives" is arguably at odds with the Supreme Court's definition of "waiver" in *Olano*—the "intentional relinquishment or abandonment of a right." *Olano,* 507 U.S. at 733, 113 S.Ct. 1770. Per this argument, failure to comply with Rule 12 could be seen as more akin to a forfeiture—an inadvertent "failure to make the timely assertion of a right"—that would result in plain error review rather than a waiver. *Id.* Rule 12's history, however, indicates that its text means what it says. As previously noted, in 1974 the Rules were changed to require—with an explicit threat of waiver—that motions to suppress be raised prior to trial in accordance with the district court's desired timetable. In 2002, well after *Olano,* the waiver provision of section (f) was moved to section (e) and its text was revised, but the Advisory Committee kept the term "waiver" in place. *See* Fed.R.Crim.P. 12 advisory

committee's note to 2002 amendments. Had the drafters thought that term outdated in light of *Olano* or other precedent, they could have changed the term to "forfeiture," but they did not.

*United States v. Rose,* 538 F.3d at 182–83. The court built on this rationale with the recognition that there exist prudential concerns for an application of a waiver analysis:

> Allowing a defendant to raise a suppression issue for the first time on appeal absent good cause carries substantial costs that are not outweighed by any attendant benefits. If a defendant has not raised a suppression issue before the district court, the Government (under an assumption that its proffered evidence was admissible) may plausibly conclude during trial that it does not need to accumulate and introduce additional evidence to prevail. Moreover, on appeal the Government has lost its chance to introduce valuable evidence in opposition to the suppression motion. And we agree with the *Chavez–Valencia* Court [*United States v. Chavez–Valencia,* 116 F.3d 127 (5th Cir.), *cert. denied,* 522 U.S. 926, 118 S.Ct. 325, 139 L.Ed.2d 252 (1997)] that a choice of plain error review over a waiver approach would do little, if anything, to further the deterrent effect of the exclusionary rule.

*Id.,* 538 F.3d at 183.

In *United States v. Burke,* 633 F.3d 984 (10th Cir.), *cert. denied,* —— U.S. ——, 131 S.Ct. 2130, 179 L.Ed.2d 919 (2011), the Tenth Circuit held that the defendant waived suppression arguments that had not been presented before the district court. Writing for the federal intermediate appellate court, Judge Tymkovich pointed out that the Tenth Circuit has held, on the strength of the waiver provision set forth in FED. R.CRIM.P. 12(e), that "[w]hen a motion to suppress evidence is raised for the first time on appeal," it "must decline review." *Burke,* 633 F.3d at 987 (citing *United States v. Brooks,* 438 F.3d 1231, 1240 (10th Cir.2006)). Yet application of the waiver provision was not limited to the failure to file a mandatory motion; a failure to raise a specific argument before the

district court would also preclude appellate review. The Tenth Circuit added:

We have also held "this waiver provision applies not only to the failure to make a pretrial motion, but also to the failure to include a particular argument in the motion." *United States v. Dewitt*, 946 F.2d 1497, 1502 (10th Cir.1991); *see United States v. Banks*, 451 F.3d 721, 727 (10th Cir. 2006) (explaining the general rule that if a party fails to raise a specific argument in a suppression hearing they waive that argument on appeal); *see also United States v. Rose*, 538 F.3d 175, 185 (3d Cir.2008) ("Under Federal Rule of Criminal Procedure 12, a federal criminal defendant is barred, absent good cause, from raising a reason to suppress evidence for the first time on appeal. This conclusion finds support in the Criminal Rules' text, their history, our Court's case law, and the policy underlying Rule 12."); *United States v. Pope*, 467 F.3d 912, 918–19 (5th Cir.2006) ("We have also held that failure to raise specific issues or arguments in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal.").

In *United States v. Walker*, 665 F.3d 212 (1st Cir.2011), the defendant asserted, for the first time on appeal, that the indictment was defective. The United States Court of Appeals for the First Circuit ruled that Walker's challenge was barred. Judge Selya explained for the court:

Under the Criminal Rules, a defendant must challenge a perceived defect in an indictment before the commencement of trial. Fed.R.Crim.P. 12(b)(3)(B). A failure to mount such a challenge within the prescribed time frame constitutes a waiver. Fed.R.Crim.P. 12(e). This is not a judicial gloss; Rule 12(e) itself uses that precise terminology.

*United States v. Walker*, 665 F.3d at 227.

The First Circuit went on to explain that procedural default in this context differs from the usual waiver-forfeiture distinction, and reached a result that squares with our Court in *Carroll:*

To be sure, this is not a typical "waiver." Waiver normally involves the intentional relinquishment of a known right. *See, e.g., United States v. Carrasco–de–Jesús,* 589 F.3d 22, 26 (1st Cir.2009). "Forfeiture" is the term that is normally used to describe an unexplained failure to make a timely assertion of a right. *See, e.g., United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). This distinction can be important. Waived objections cannot be reviewed on appeal (save for the rare case in which a reviewing court, as a matter solely of its discretion, forgives the waiver), whereas forfeited objections are reviewable for plain error.

It is an open question in this circuit whether the words "waiver" and "waives," as used in Rule 12(e), should be taken literally. Several other courts of appeals have pondered this question. The majority view is that a party's failure to raise Rule 12(b)(3) defenses prior to trial—such as a challenge to the form of an indictment—constitutes a waiver in the classic sense and, thus, precludes appellate review of the defaulted challenge. A few circuits, however, have treated such defaults as forfeitures and engaged in plain error review.

We believe that Rule 12(e) says what it means and means what it says. Great weight must be given to the plain language of the rule, particularly since Congress amended it in 2002 (after the Supreme Court had made the distinction between waiver and forfeiture pellucid) and left the "waiver" terminology intact. See Fed.R.Crim.P. 12 advisory committee's notes; *see also Olano,* 507 U.S. at 733, 113 S.Ct. 1770 (explaining waiver/forfeiture distinction). What is more, the matters that fall within the compass of Rule 12(b)(3) (and thus Rule 12(e)) are normally correctable before trial if seasonably brought to the attention of the district court and the government. It strikes us as manifestly unfair for a defendant to sit silently by, take his chances with the jury, and then be allowed to ambush the prosecution through a post-trial attack. Accordingly, we join the majority view and hold that a failure to challenge a defect in an indictment

before trial, as required by Rule 12(b)(3), results in an unreviewable waiver of that challenge pursuant to Rule 12(e). Because the appellant did not raise either duplicity or multiplicity challenges at any time prior to trial, he has waived those challenges.

*United States v. Walker*, 665 F.3d at 227–28 (some citations and footnotes omitted).

Finally, the First Circuit observed that a defendant may avoid procedural default if "good cause" can be shown. Both in that case, and in the case before us, neither Walker in that case nor appellant in the present case attempted to justify the failure to advance a necessary challenge or raise a specific argument before the trial court. Indeed, in the case before us, appellant has not attempted to demonstrate "good cause" in a reply brief, even though alerted by the State's response that procedural default was at issue. Judge Selya's conclusion on this point is instructive:

> This framework does not risk a miscarriage of justice due to the presence of a key exception: if a defendant can show "good cause" for a failure to raise a Rule 12(b)(3) challenge prior to trial, that challenge may be entertained by the district court and reviewed on appeal. See Fed.R.Crim.P. 12(e). Here, however, the appellant did not make a good cause argument in the district court at any time, and he has not made a cognizable showing of good cause in this court. Given these circumstances, there is no unfairness in holding him to his waiver.

*United States v. Walker*, 665 F.3d at 228 (citation omitted).

We reiterate that this Court has explained that a failure to raise a suppression issue at the trial level constitutes a waiver in several contexts: (1) if the defendant fails to comply with the time requirements for filing a motion under the rule; (2) if the defendant files a notice but fails to pursue it; and (3) if there is a hearing on the motion, but the defendant fails to present any grounds to support the motion. *Carroll, supra,* 202 Md.App. at 510 (citing *Jackson v. State,* 52 Md.App. 327, 331–32, 449 A.2d 438, *cert. denied,* 294 Md. 652 (1982)); *Perry*

*v. State*, 344 Md. 204, 227, 686 A.2d 274 (1996) (defendant waived suppression issue by failing to raise it prior to trial), *cert. denied*, 520 U.S. 1146, 117 S.Ct. 1318, 137 L.Ed.2d 480 (1997).

In the instant case, appellant failed to raise at the motions hearing the specific argument that Officer McConnell did not advise him that he would be entitled to appointed counsel at no expense. In fact, it is arduous to discern any grounds or basis for appellant's motion to suppress from the motions hearing transcript. Accordingly, appellant's contention is not preserved for appellate review because appellant raises this argument for the first time at the appellate level.[7] As illustrated by the federal decisions discussed above, and cognizant that their interpretations of FED.R.CRIM.P. 12(e) have informed analyses of Md. Rule 4–252(b), we conclude that appellant's specific challenge to the admission of his statement has been waived.

## II.

Appellant next complains of the circuit court's refusal to permit the defense to present the testimony of appellant's mother, Shanda Collins. We see no reversible error.

Following the close of the State's case, the trial court asked the defense whether it would put on a case. This issue arose in the following context:

---

7. This Court has limited discretion under Md. Rule 8–131(a) to address an unpreserved issue. *Kelly v. State*, 195 Md.App. 403, 431, 6 A.3d 396 (2010), *cert. denied* 417 Md. 502, 10 A.3d 1181 (2011). This discretion is one, however, that:

> [A]ppellate courts should rarely exercise, as considerations of both fairness and judicial efficiency ordinarily require that all challenges that a party desires to make to a trial court's ruling, action, or conduct be presented in the first instance to the trial court so that (1) a proper record can be made with respect to the challenge, and (2) the other parties and the trial judge are given an opportunity to consider and respond to the challenge.

*Id.* (citing *Chaney v. State*, 397 Md. 460, 468, 918 A.2d 506 (2007)).

THE COURT: All right. Have you made a decision as to whether you're going to put on a case?

[DEFENSE COUNSEL]: Your Honor, I believe we will call one witness.

THE COURT: All right. Are you ready?

[DEFENSE COUNSEL]: Yes.

THE COURT: All right. Let's bring the jury back.

[PROSECUTOR]: Which person are you calling?

[DEFENSE COUNSEL]: Pardon me?

[PROSECUTOR]: Who are you calling?

[DEFENSE COUNSEL]: Calling Shanda Collins.

[PROSECUTOR]: Did you put that on your voir dire?

[DEFENSE COUNSEL]: No. She is basically to rebut some of the testimony that you've presented.

[PROSECUTOR]: I didn't get notice of that witness.

[DEFENSE COUNSEL]: Well, Your Honor, to be honest, we didn't have any—we had no—we had no way to know for sure that Ms. Collins would be available yesterday or today.

THE COURT: Did I announce her in voir dire?

[DEFENSE COUNSEL]: You did not announce her in voir dire; however, I have made certain that she is not in the courtroom.

THE COURT: Hold on.

(Whereupon, the jury re-entered the courtroom.)

THE COURT: All right. You can come up.

[DEFENSE COUNSEL]: There are certain implications that the State made that she can rebut.

THE COURT: You can come up.

(Whereupon, the Defendant and counsel approached the bench, and the following ensued:)

THE COURT: All right. I asked the defense do you have any evidence, any witnesses you wish to call and your answer to my question is whom?

[DEFENSE COUNSEL]: I'm sorry. I didn't hear.

THE COURT: Who is it that you intend to call?

[DEFENSE COUNSEL]: I'm calling Ms. Shanda Collins. Her relationship is she's the mother of the Defendant and is also the person that he lived with in that period of time, lived with prior to his incarceration and lived with for a period of time, and she will be able to rebut that Mr. Joyner was a resident in that household.

THE COURT: All right.

[PROSECUTOR]: State is objecting.

THE COURT: Basis?

[PROSECUTOR]: Improper notice. It's not just a rebuttal. It's also—it's also an alibi witness which I mean

THE COURT: He's not saying that. She's not an alibi because he's not saying that the Defendant wasn't there at the time that all of this happened. So I don't think it's an alibi witness, but go ahead.

[PROSECUTOR]: In addition, he has not provided State notice of this witness which conforms with the discovery rules which is 30 days prior to the first trial date.

[DEFENSE COUNSEL]: Well, in point of fact, Your Honor, had the State not made an argument and an implication that Mr. Joyner was, in fact, a resident of that household, there would have been no need to call Ms. Collins.

THE COURT: Certainly that's no surprise.

[DEFENSE COUNSEL]: And, secondly, we feel it is in the interest of justice for her to be able to establish the residence of Mr. Joyner and in point of fact, him being incarcerated and Ms. Collins not having a phone, we really did not have any measure of being able to get ahold of her until she actually came in yesterday.

[PROSECUTOR]: Your Honor, my understanding is that this witness is the Defendant's mother. That seems like a witness that's in his control and that he could have easily accessed by even subpoena to come to the trial date. Even in defense opening, he even mentioned that he did not live there. So the fact is this is not something that—

this theory is not based on something that the evidence unfolded at trial. He already knew that the issue is whether or not he was there, had knowledge of the substance in that apartment.

So waiting till the last hour to call this witness is extremely prejudicial to the State. It's not in the voir dire and the State never got formally a written notice and this is actually the third trial date.

[DEFENSE COUNSEL]: And, in fact, in the previous two trial dates, Ms. Collins was not available. Also, Ms. Collins is a resident of the District of Columbia which would make a subpoena something she could ignore if she were so—

THE COURT: There are certainly ways to serve people in the District of Columbia. Cumbersome I agree, but it's doable.

[DEFENSE COUNSEL]: And, finally, her not having a phone, the Defendant not being sure where she is and the Defendant being incarcerated throughout the entirety of the pretrial, since November 4th and today, we've had no ability to contact Ms. Collin—contact Ms. Collins with any sense of a surety that we could. In fact, I have not been able to contact her. She appeared yesterday, came back today.

THE COURT: Is that her in the back of the courtroom?

[DEFENSE COUNSEL]: No.

THE COURT: That's not Ms. Collins?

[DEFENSE COUNSEL]: No.

THE COURT: All right. Anything else?

[DEFENSE COUNSEL]: That's it.

THE COURT: All right. You didn't notify them. You concede that you didn't notify them beforehand, nor was she mentioned in voir dire, so I'm not going to let her testify.

Following this exchange, appellant testified on his own behalf.

Appellant insists that the trial court ran afoul of the Court of Appeals's decisions in *Taliaferro v. State*, 295 Md. 376, 456 A.2d 29 (1983), and *Colter v. State*, 297 Md. 423, 466 A.2d 1286

(1983), by applying a "hard and fast" rule and failing to consider any alternatives to the strict preclusion of the testimony at issue or address any of the discretionary factors set forth in *Taliaferro*. The State counters that the trial court acted within its discretion by precluding the testimony of a witness who had not been disclosed as required. We conclude that, assuming the trial court abused its discretion, or even failed to exercise it, any misstep by the trial court was harmless beyond a reasonable doubt.

Maryland Rule 4–263 governs discovery in circuit court.[8] This Court recently set forth the appropriate standard pertaining to the appellate court's review of the trial court's consideration of a discovery violation and its application of a remedy:

> We review a trial court's finding of a discovery violation under the clearly erroneous standard. "When reviewing the

---

**8.** Md. Rule 4–263 relevantly provides:

**Rule 4–253. Discovery in circuit court.**
(a) **Applicability.** This Rule governs discovery and inspection in a circuit court.

\*　　\*　　\*

(d) **Disclosure by the State's Attorney.** Without the necessity of a request, the State's Attorney shall provide to the defense:

\*　　\*　　\*

(3) State's witnesses. The name and, except as provided under Code, Criminal Procedure Article, § 11–205 or Rule 16–1009(b), the address of each State's witness whom the State's Attorney intends to call to prove the State's case in chief or to rebut alibi testimony, together with all written statements of the person that relate to the offense charged;

\*　　\*　　\*

(e) **Disclosure by defense.** Without the necessity of a request, the defense shall provide to the State's Attorney:
(1) Defense witness. The name and, except when the witness declines permission, the address of each defense witness other than the defendant[.]

\*　　\*　　\*

(h) **Time for discovery.** Unless the court orders otherwise:
(1) the State's Attorney shall make disclosure pursuant to section (d) of this Rule within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4–213[.]

circuit court's imposition of sanctions for discovery abuse, we are bound to the court's factual findings unless we find them to be clearly erroneous." *Klupt v. Krongard,* 126 Md.App. 179, 193 [728 A.2d 727] (1999). "Our scope of review is narrow and our function is not to substitute our judgment for that of the fact finder, even if we might have reached a different result." *Id.* Instead, we must "decide only whether there was sufficient evidence to support the trial court's findings. In making this decision, we must assume the truth of all the evidence, and of all the favorable inferences fairly deducible therefrom, tending to support the factual conclusions of the lower court." *Id.*

"When considering the actual imposition of discovery sanctions, our review is narrower still." *Id.* We review the granting of a motion in limine for discovery sanctions under an abuse of discretion standard. *Saxon Mortgage. Servs. v. Harrison,* 186 Md.App. 228, 252, 973 A.2d 841, 854–55 (2009) (citing *Lowery v. Smithsburg Emergency Med. Serv.,* 173 Md.App. 662, 674, 920 A.2d 546 (2007)). We entrust trial judges "with a large measure of discretion in applying sanctions for discovery violations." *Id.* (internal quotations omitted). The Court of Appeals has identified five factors ("*Taliaferro* factors") that a trial court must consider when exercising its discretion to exclude evidence disclosed in violation of the discovery rules:

(1) whether the disclosure violation was technical or substantial;

(2) the timing of the ultimate disclosure;

(3) the reason, if any, for the violation;

(4) the degree of prejudice to the parties respectively offering and opposing the evidence;

(5) whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance.

*Id.* (quoting *Taliaferro v. State,* 295 Md. 376, 390–91, 456 A.2d 29, 37 (1983)). We have recognized that these factors often overlap and therefore "they do not lend themselves to

compartmental analysis." *Storetrax.com, Inc. v. Gurland,* 168 Md.App. 50, 89, 895 A.2d 355, 378 (2006). "When a discovery violation becomes apparent only after the trial has commenced, the potential for prejudice is greater than if the discovery violation had occurred prior to trial." *Id.* *Schneider v. Little,* 206 Md.App. 414, 433, 49 A.3d 333 (2012).

The Court's decision in *Colter v. State,* 297 Md. 423, 466 A.2d 1286 (1983) is instructive. In *Colter v. State,* the trial judge applied the discovery sanction "as a mandatory rule excluding the testimony of an undisclosed alibi witness upon the failure of the defendant to comply with the notice requirement." *Colter,* 297 Md. at 430, 466 A.2d 1286. The Court of Appeals expressed concern over the trial court's actions because it was apparent that the "trial judge had not exercised the discretion granted him under the [discovery] rule[,]" and awarded Colter a new trial. *Id.* at 430–31, 466 A.2d 1286.

In the case before us, the trial court excluded the testimony of Ms. Collins because her name had not been provided to the State and she had not been listed in *voir dire.* Although the trial court gave more than a passing consideration of the violation and the appropriate remedy, it appears that, on these facts, the trial court did not explicitly discuss all of the *Taliaferro* factors before excluding the testimony of this defense witness. *See Schneider, supra,* 206 Md.App. at 435–38, 49 A.3d 333. Nevertheless, we conclude that the trial court's error is harmless beyond a reasonable doubt.

Recently, the Court of Appeals restated the well-established rule for harmless error analysis:

[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated.

*Morris v. State,* 418 Md. 194, 221, 13 A.3d 1206 (2011) (quoting *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976) (footnote omitted)). *See Hutchinson v. State,* 406 Md. 219, 227,

958 A.2d 284 (2008) (noting continued validity of standard articulated in *Dorsey* ) (collecting cases); *Taylor v. State*, 352 Md. 338, 347 n. 7, 722 A.2d 65 (1998) (citation omitted).

In view of these principles, and upon review of the record as a whole, we are satisfied beyond a reasonable doubt that the exclusion of Ms. Collins's testimony did not contribute to the guilty verdicts. In that context, we are satisfied that the evidence that was properly admitted demonstrates a compelling case for the State because it adequately ties appellant to the drugs. In his statement, appellant acknowledged that he sold the marijuana. Even though he joked that the President was his supplier, appellant went into detail by stating that he did not cut the contraband, but merely sold it. Although, in making a motion for judgment of acquittal, appellant argued that the police had to search for the drugs (implying that the State failed to establish any link between appellant and the contraband), officers observed some of the contraband in open view. Appellant sought Ms. Collins's testimony to prove that appellant did not reside at the Marcy Road apartment, and thus undermine the State's case. Given the strength of the evidence, including appellant's concession to Detective McConnell, we are satisfied that the erroneous exclusion of this witness did not affect the verdict.

## III.

■ Appellant next complains of the trial court's decision to permit the State to present the testimony of an expert witness, Ms. Edwards, whose identity as an expert was disclosed just prior to trial. This issue arose when defense counsel filed a motion *in limine* to exclude Ms. Edward's testimony:

> [DEFENSE COUNSEL]: Michel Figus on behalf of Mr. Joyner. Your Honor, the defense has a motion in limine at this time. As we look at the witness list that was provided to us today, we see chemist Nicole Edwards listed as a State's witness. Given while it is listed, we are taking that to indicate that Ms. Edwards is here as an expert witness as a chemist. The only prior notifications

that we've received regarding any chemist as an expert witness was received by the defense on February 15th, on or about February 15th; and there is a list of chemists that I can read for you if you prefer.

THE COURT: I'm looking. It is filed in the case.

[DEFENSE COUNSEL]: Pardon me?

THE COURT: It is filed in the case.

[DEFENSE COUNSEL]: Ms. Edwards is not on the list. I have not received any other notification. I've also taken the liberty to look at the file during lunch hour and I didn't see any amended notification.

Now, I will say for clarification purposes that about a week go I got a CV for Ms. Edwards but really nothing else, nothing else indicating that she was going to be called, particularly no notification to notify the Court as well.

For that reason, I am asking that Ms. Edwards not be allowed to testify in this case due to the lack of notification.

[PROSECUTOR]: Your Honor, actually, I filed a notice of the expert witness Nicole Edwards to be called as a forensic chemist on April 5th, which should be filed with the court. I also had one dropped off to defense counsel during the same time that I actually also sent defense counsel by email the CV, in addition the completed drug report.

[DEFENSE COUNSEL]: Well, your Honor, I am not going to dispute whether or not—I have no idea whether a notice, an amended notice, was sent or is delivered to our door. It did not reach my desk. What concerns me about it is that not only did it reach my desk, but it appears, if I read the file correctly, didn't reach the file either.

THE COURT: Well, it is not in the file.

[DEFENSE COUNSEL]: So ... I would again submit that there's been a lack of prior notification regarding this chemist.

[PROSECUTOR]: Your Honor, I have a date stamped from the clerk's office when it was filed on April 5th.

THE COURT: Well, if you would tend that Madam Clerk so it can get in the file one way or the other.

[PROSECUTOR]: Thank you.

THE COURT: All right. Anything else?

[DEFENSE COUNSEL]: We would just submit that the time frame of the notification is insufficient. Under the circumstances . . . Ms. Edwards should not be allowed to testify as an expert given the lack of proper notification.

THE COURT: All right. The motion in limine is denied. Assuming we get to the point where she testifies, I'll note that you have a continuing objection to any testimony that she produces.

■ Appellant insists that Md. Rule 4–263 "twice required disclosure of Ms. Edwards' identity." We discern no basis for relief and explain. Maryland Rule 4–263(d)(8) mandates the disclosure of reports or statements of experts and obligates the State to identify the expert.[9] Rule 4–263(h) requires the State to disclose the identities of its witnesses "within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 4–213[.]" The purpose of the discovery rules is to "assist the defendant in preparing his defense, and to protect him from surprise." *Hutchins v. State*, 339 Md. 466, 473, 663 A.2d 1281 (1995) (citation and internal quotation marks omitted).

---

9. Md. Rule 4–263(d)(8) provides:
   (8) Reports or statements of experts. As to each expert consulted by the State's Attorney in connection with the action:
   (A) the expert's name and address, the subject matter of the consultation, the substance of the expert's findings and opinions, and a summary of the grounds for each opinion;
   (B) the opportunity to inspect and copy all written reports or statements made in connection with the action by the expert, including the results of any physical or mental examination, scientific test, experiment, or comparison; and
   (C) the substance of any oral report and conclusion by the expert.

On February 17, 2011, the State's discovery response was filed with the circuit court and served on appellant's counsel. At that time, the State listed those forensic chemists the prosecutor thought would analyze and report on the contraband seized. In addition, the State's discovery included:

A. Search & Seizures: 55 small pink colored zips that contained crack cocaine with a total weight of 9.8 grams, 135 small bags of marijuana with a total weight of 275.2 grams, SKS or AK–47 style magazine loaded with 24 rounds of 7.62 x 39mm, Wolf ammunition[.]

Certainly, the State did not disclose the identity of its expert witness, Ms. Edwards, until the prosecutor attempted to file that information with the circuit court and appellant's counsel on April 5, eight days prior to trial.[10] Nevertheless, we conclude that the State fulfilled its "continuing duty to disclose" by supplementing its discovery with the name of the DEA chemist. Further, appellant has failed to demonstrate any prejudice that resulted from any delay in disclosing the name of the DEA chemist who would testify or the admission of her report, as soon as her identity was known to the prosecutor.

As noted, the prosecution had already provided in discovery access to the marijuana and cocaine that had been seized in time for the defense to subject this evidence to its own analysis. While defense counsel stated that notice that Ms. Edwards would testify may not have "reached" his desk, the record establishes that the prosecutor filed with the circuit court a "Notice of Expert Witness (Chemist)" on April 5, 2011, which contains her certification that she served that notice on defense counsel on the same day. We further note that the discovery rules provide that the nature and extent of any sanction lies within the discretion of the trial court. *See* Md.

---

**10.** The prosecutor represented that she had supplemented the State's disclosure by identifying Ms. Edwards as the relevant expert and produced a date-stamped sheet as evidence of its filing with the court and further represented that she had provided this information to counsel on April 5, 2011. Defense counsel represented that the supplemental disclosure did not reach his desk.

Rule 4–263(n). The trial court did not abuse its discretion by permitting Ms. Edwards to testify or by admitting her report.

## IV.

■ Appellant last takes issue with the trial court's decision to permit the State to play portions of recorded telephone conversations, allegedly between appellant and another person while appellant was in jail. On the first day of trial, when the State offered into evidence recordings of these telephone conversations, defense counsel objected. The trial court ruled that the recordings had not been authenticated, "unless [the State] get[s] somebody to identify that that's his voice." When the prosecutor suggested that the police officers could identify appellant's voice on the recordings, defense counsel objected:

> [DEFENSE COUNSEL]: Your Honor, we would object to that. . . . [I]f we sit and play this tapes and let's say do you recognize that, even if we can demonstrate to your satisfaction, the prejudicial damage of these tapes have already been done.

During the State's cross-examination, the prosecutor sought to use the recordings of telephone as impeachment evidence:

> [PROSECUTOR]: Your Honor, at this time the State would like to offer impeachment evidence. The Defendant had stated that he did not live at that address on November 4, 2010. His credibility is at issue. The State at this time would like to move in State's Exhibit Numbers 32—
>
> THE COURT: What's that?
>
> [PROSECUTOR]:—and 31. Those are the jail calls. Now they come in because we have heard—the jury has heard from—
>
> THE COURT: You still haven't crossed the threshold of identification in this Court's mind in terms of identifying him as the person that's speaking.

Although the trial court ruled that the State could not introduce the tapes because they had not been authenticated, the court eventually permitted the prosecutor to play portions

of the recordings and ask appellant whether he could recognize his own voice. Appellant testified that the voice on the recordings was not his.

On appeal, the appellant urges that the trial court erred by permitting the State to play portions of the recording during cross-examination in an attempt to get appellant to identify a voice on the recordings as his. He asserts that this tactic permitted the State to execute an end run around the trial court's ruling that the recordings were inadmissible as unauthenticated, and that he was prejudiced because the jury heard the jailhouse telephone conversation.

The State retorts that appellant has failed to demonstrate any prejudice that followed from the trial court allowing the prosecutor to unsuccessfully attempt to get appellant to identify whether his voice appears on the recording. We are constrained to agree.[11] We are reluctant to conclude that the trial court abused its discretion so as to prejudice the defense, by permitting the prosecutor to attempt to authenticate the recording by playing portions of the conversations in the presence of the jury, when there is no record of what was played. *Cf. Mora v. State,* 355 Md. 639, 650, 735 A.2d 1122 (1999) (incumbent upon appellant claiming error to produce sufficient factual record for appellate court to determine whether error committed).

For the reasons stated above, we affirm the judgments of the Circuit Court for Prince George's County.

---

**11.** Although the issue is not whether the prosecutor took the steps necessary to authenticate the recording, we note with approval a decision of the Minnesota Supreme Court, which observed years ago that

[o]n the issue of identification, it is always sufficient if it can be shown that the person calling can identify the voice of the person speaking at the other end of the line. But it is not always essential that identity be so established. It may be established by other surrounding facts and circumstances. Circumstances preceding or following the conversation or the subject matter itself may serve to establish the identity of the party.

*Sauber v. Northland Ins. Co.,* 251 Minn. 237, 87 N.W.2d 591, 596 (1958) (footnote omitted).

JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.