56 A.3d 242

**Reginald McCRACKEN**

v.

**STATE of Maryland.**

**No. 18, Sept. Term, 2012.**

Court of Appeals of Maryland.

Nov. 28, 2012.

508

Michael T. Torres, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Carrie E. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, and Brian S. Kleinbord, Asst. Atty. Gen., Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BARBERA, J.

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), permits a law enforcement officer who has stopped an individual reasonably suspected of criminal activity to conduct a cursory search—a "frisk"—of that individual if the officer reasonably suspects the individual is carrying a weapon. This "strictly circumscribed" intrusion on the suspect's privacy, however, "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* at 26, 88 S.Ct. 1868. Yet, if the officer, while conducting a proper *Terry* frisk, comes upon an item that by mere touch is immediately apparent to the officer

to be contraband or of "incriminating character," then the officer is authorized to seize that item immediately. *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

We must decide in the present case whether there was compliance with these Fourth Amendment principles. On the facts of this case, we conclude that there was compliance.

## I.

Petitioner, Reginald McCracken, was convicted in the Circuit Court for Baltimore City of transporting a handgun in a motor vehicle. A police officer found the handgun in a vehicle he suspected Petitioner had been using a short time earlier for "hacking." [1] The police officer located the vehicle by pressing a car remote he had seized, along with a set of car keys, while frisking Petitioner. Before trial, Petitioner moved to suppress the car keys, remote, and handgun.

The only evidence presented at the suppression hearing was the testimony of Officer Adrian McGinnis of the Baltimore City Police Department. Officer McGinnis testified that he responded to a report of an armed individual in the early morning hours of September 18, 2010. Upon arriving on the scene minutes later, he witnessed a woman and Petitioner arguing on the front porch of a residence. Other officers at

---

**1.** "Hacking" is a colloquial term used to describe the provision of taxi services without a license. Article 19, § 52–2 of the Baltimore City Code (2012) prohibits hacking under the section titled "Providing taxi services without license":

(a) *Prohibited conduct.*
It shall be unlawful for any person to solicit, offer to transport, or transport a passenger or passengers for hire in Baltimore City unless said person offering to transport shall be operating a vehicle duly authorized to perform taxicab services in Baltimore City under the authority of the Public Service Commission of Maryland.
(b) *Scope of prohibition.*
This section is intended to include as illegal:

\*　　\*　　\*

(2) any use of a private vehicle to transport passengers for hire in performing taxicab services.

the scene separated the two, and several officers remained with Petitioner near the bottom of the steps to the residence while Officer McGinnis spoke with the woman on the porch. The woman, who did not give her name, appeared to Officer McGinnis to be afraid. Upon questioning by the officer, the woman explained that Petitioner had just "hacked" her to her present location in East Baltimore. The woman reported to the officer that she and Petitioner argued during the ride, and he threatened to shoot her. Officer McGinnis recognized "hacking" as a term describing the illegal transport of a person in exchange for money without a taxi license.

The chronology of what happened next is, by all accounts, somewhat muddled. Nevertheless, viewing the evidence in the light most favorable to the State, as we must,[2] we discern the following sequence of events. Officer McGinnis approached Petitioner who, in responding to the officer's inquiries, stated that he and the woman had been arguing over a cell phone. Petitioner denied, however, that he had been hacking. Officer McGinnis learned that Petitioner did not live in the immediate neighborhood. When asked how he came to be present in the neighborhood, Petitioner first told Officer McGinnis that he had arrived there on foot, then said that his wife had dropped him off there.

Officer McGinnis, suspecting that Petitioner might be carrying the handgun to which the woman had referred, frisked him by patting down his outer clothing. While patting down Petitioner's left pants pocket, Officer McGinnis felt what he immediately discerned was a set of keys and a small box hooked to those keys, which he believed to be a car remote. Officer McGinnis, believing that the keys and remote corresponded to Petitioner's vehicle, immediately removed them from Petitioner's pants pocket and, thinking that Petitioner's car was probably parked in the area, pressed the alarm button

---

**2.** *See Crosby v. State*, 408 Md. 490, 504, 970 A.2d 894 (2009) (stating that, on review of a ruling on a motion to suppress evidence, the appellate court must assess the suppression court's findings of fact, and reasonable inferences drawn therefrom, in the light most favorable to the prevailing party on the motion).

on the remote.[3] Doing so sounded an alarm on a car parked approximately three car-lengths away. Officer McGinnis shone his flashlight into the vehicle's open passenger side window, saw a black handgun in the open glove compartment, and seized it.

Petitioner argued for suppression of the keys and remote on the ground that Officer McGinnis had seized those items from Petitioner's pants pocket by exceeding the proper scope of a lawful *Terry* frisk. As for the handgun, Petitioner did not argue that the seizure of it from the car was unlawful, in and of itself. Moreover, he made no argument that Officer McGinnis conducted a second unlawful search when, after seizing the keys and car remote, he pressed a button on the remote to ascertain the location of the vehicle. Instead, Petitioner argued only that the handgun must be suppressed as the tainted fruit of the earlier unlawful seizure of the keys and remote. Notably, in that regard, Petitioner did not contest that he was illegally stopped, pursuant to *Terry,* nor did he challenge Officer McGinnis's authority, under *Terry,* to conduct the frisk for the weapon the woman had mentioned. Petitioner likewise did not argue that Officer McGinnis violated the prohibition against manipulating an item encountered during a lawful frisk in order to discern its identity. Petitioner's argument was grounded solely on the principle that an item touched during a lawful frisk cannot be seized under the "plain feel" doctrine recognized in *Dickerson* unless the item, once felt, is "immediately apparent" to be contraband or evidence of a crime.

The Supreme Court has made clear that the words "immediately apparent" in the context of the "plain view" or, as here, "plain feel" doctrine mean that the officer, upon seeing or feeling the item, must have probable cause to believe that the

---

**3.** At oral argument before this Court, the State contended that, viewing the evidence in the light most favorable to the State, this Court should assume that Petitioner's statements regarding his mode of transportation to the scene were made prior to the seizure of the keys from his pocket. We agree and shall assume that Petitioner made those statements before Officer McGinnis felt, then seized, the keys and remote.

item is contraband or evidence of a crime. *See Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). Petitioner contended that, when Officer McGinnis touched the keys and remote, he lacked probable cause to believe those items were related to criminal activity. Petitioner pointed out that Officer McGinnis had acknowledged during cross-examination that he did not know for sure at the moment he touched the keys and remote that they necessarily would unlock a vehicle, and he was able to confirm that fact only after he removed those items from Petitioner's pants pocket. In that same vein, Petitioner further argued that the officer did not have probable cause to believe the keys and remote were evidence of a crime until he pressed a button on the remote and set off an alarm in a nearby vehicle.

The court denied Petitioner's motion to suppress the physical evidence. The court ruled that the frisk of Petitioner was justified by the woman's statement that Petitioner had threatened to shoot her. The court acknowledged that, although it was possible the keys and remote Officer McGinnis felt in Petitioner's pocket did not belong to the car supposedly used in the hacking, the seizure was justified nevertheless. In so ruling, the court evidently, albeit implicitly, found that, when Officer McGinnis felt the keys and remote, they were immediately apparent to him to be evidence of Petitioner's suspected hacking.[4]

Following the court's ruling, the case proceeded immediately to trial on an agreed statement of facts. The court found Petitioner guilty of transporting a handgun in a motor vehicle then sentenced him for that offense.

Petitioner noted an appeal to the Court of Special Appeals, arguing, as he does here, that Officer McGinnis violated *Dickerson* by seizing the keys and car remote from Petitioner's pants pocket without the incriminating character of those items being "immediately apparent." In an unreported opin-

---

4. *See Abdul–Maleek v. State*, 426 Md. 59, 74, 43 A.3d 383 (2012) (recognizing the doctrine that "judges are presumed to know the law and apply it correctly").

ion, the Court of Special Appeals affirmed the judgment of the Circuit Court. We granted a writ of certiorari, *McCracken v. State*, 426 Md. 427, 44 A.3d 421 (2012), and now affirm that judgment.[5]

## II.

In reviewing the denial of a motion to suppress evidence allegedly seized in violation of the Fourth Amendment, we are confined to the record developed at the suppression hearing. *Longshore v. State*, 399 Md. 486, 498, 924 A.2d 1129 (2007). As noted, we view the suppression court's findings of fact, and reasonable inferences drawn therefrom, in the light most favorable to the prevailing party on the motion below, in this case, the State. *Crosby v. State*, 408 Md. 490, 504, 970 A.2d 894 (2009). We do not disturb those findings unless clearly erroneous. *Id.* at 504–05, 970 A.2d 894. We conduct "our own independent constitutional appraisal" of whether the Fourth Amendment has been violated by applying the law to the facts of the matter *sub judice*. *Bailey v. State*, 412 Md. 349, 362, 987 A.2d 72 (2010) (quoting *Crosby*, 408 Md. at 505, 970 A.2d 894).

The sole basis for Petitioner's Fourth Amendment claim is grounded in the "plain feel" doctrine discussed in *Dickerson*, more particularly the requirement of the doctrine that items felt during a lawful *Terry* frisk must be "immediately apparent" as evidence of a crime. We agree with the State[6] and

---

5. Petitioner presented the following two questions in his petition for writ of certiorari:

1. Does the plain-feel doctrine allow police to seize evidence when they have only reasonable suspicion, but not probable cause, to associate that evidence with criminal activity?

2. Did the Court of Special Appeals err in concluding that the officer could seize a set of keys and a car remote because he had probable cause to believe they were evidence of "hacking"?

Both questions, though in different words, address the same issue, which is whether Officer McGinnis had the authority, under *Dickerson*, to seize the keys and car remote from Petitioner's pants pocket, as evidence of hacking.

6. The State, in addition to arguing that the seizure of the keys and remote are justified under the plain feel doctrine, also argued in its

our colleagues on the Court of Special Appeals that Petitioner is not entitled to relief on this ground.

 The plain feel doctrine has developed in the wake of the "plain view" doctrine. It is settled that law enforcement officials may seize items in plain view without a warrant under certain circumstances. *Hicks,* 480 U.S. at 326, 107 S.Ct. 1149. If, for example, a police officer is conducting, but not exceeding, a lawful search, then the officer's observation of contraband or evidence of a crime in plain view does not constitute an independent search or intrusion necessitating a warrant or compliance with some exception to the warrant requirement. *See Dickerson,* 508 U.S. at 375, 113 S.Ct. 2130 (describing the rationale for the plain view doctrine). Requiring the officer to obtain a warrant "under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment." *Id.* The plain view doctrine has a three-pronged inquiry: (1) the officer must be lawfully "at the place from which the evidence could be plainly viewed"; (2) the "incriminating character" of the item in question must be "immediately apparent"; and (3) the officer "must also have a lawful right of access to the object itself." *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *see also Wengert v. State,* 364 Md. 76, 88–89, 771 A.2d 389 (2001). For the incriminating character of an item to be "immediately apparent," the officer, upon seeing the item, must have probable cause to believe that the "item in question is evidence of a crime or is contraband." *Hicks,* 480 U.S. at 326, 107 S.Ct. 1149.

 The Supreme Court has recognized that the rationale behind the plain view doctrine applies with equal force when law enforcement discovers contraband or evidence of a crime through the sense of touch. Thus, in the context of a *Terry* frisk,

---

brief that alternatively, the seizure of the keys was justified under the Fourth Amendment as a search incident to arrest. The State advised this Court during oral argument that it was abandoning the latter argument. Therefore, we do not address it.

if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Dickerson,* 508 U.S. at 375–76, 113 S.Ct. 2130.

Applying the plain feel doctrine to the facts presented in *Dickerson,* the Supreme Court held that the seizure at issue in that case went beyond the limits of the doctrine. The *Dickerson* Court saw the facts before it as similar in material respect to those in *Hicks.* The Court held in *Hicks* that the seizure of stereo equipment during a lawful entry and search of the defendant's apartment in response to a shooting was unlawful because probable cause to believe that the stereo equipment was stolen arose only after the officer conducted an unauthorized "search" of the stereo by moving it to observe the serial numbers on it. 480 U.S. at 328, 107 S.Ct. 1149. In *Dickerson,* the Court held that a police officer, during a lawful *Terry* frisk, unlawfully seized a lump of crack cocaine in a small cellophane bag in the defendant's pocket because probable cause to believe the lump was cocaine arose only after the officer conducted a further "search" by "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket." 508 U.S. at 378–79, 113 S.Ct. 2130.

Petitioner argues that, much as in *Dickerson,* Officer McGinnis could not have ascertained enough information about the keys and car remote, merely upon touching them during the frisk, to make "immediately apparent" to the officer that those items were evidence of Petitioner's involvement in the crime of hacking. Petitioner likens what occurred in his case to situations in which an officer comes upon a small container inside an individual's clothing during a frisk but cannot confirm, without further investigation, that the container has within it contraband or evidence of a crime. He directs us to several cases. *E.g., Bailey,* 412 Md. at 370, 987 A.2d 72

(holding unlawful the seizure of a glass vial during a *Terry* frisk because "the incriminating nature of the object in the defendant's pocket was not immediately apparent upon [the officer's] initial touch of the object in the pat-down," thus making the removal of the vial from the defendant's pocket a "general exploratory search exceeding the permissible scope of a protective *Terry* frisk"); *Ex parte Warren,* 783 So.2d 86, 94 (Ala.2000) (holding unlawful the seizure of any hard-shell, closed container during a *Terry* frisk because "the incriminating nature of any *contents* of that container cannot be immediately apparent to the officer until he seizes it and opens it" and therefore "the officer cannot satisfy the *Dickerson* requirement that the officer have probable cause to believe, before seizing it, that the object is contraband").

Petitioner also relies on *Purnell v. State,* 832 A.2d 714, 717, 723 (Del.2003) (holding unlawful the seizure of keys from an individual's pocket during a frisk because, although the police suspected the individual was in possession of narcotics and weapons, it was not immediately apparent that the keys were linked to a nearby car or that the car contained narcotics). Petitioner points out that Officer McGinnis admitted that he did not "know" whether the keys he felt during the frisk were car keys or some other type of keys, and even if he did know they were car keys, Officer McGinnis did not "know" that the keys operated a car located nearby until he pressed the alarm button on the car remote. Therefore, concludes Petitioner, Officer McGinnis could not have had probable cause to believe that the items in Petitioner's pocket corresponded to a vehicle used for hacking.

The authority upon which Petitioner relies is inapposite to the facts of the present case. The keys and remote discovered by Officer McGinnis are not at all like the containers at issue in *Bailey* and *Warren.* Neither the vial the officer detected while frisking Bailey, nor the Tic Tac box the officer detected while frisking Warren, was immediately apparent to the officer as evidence of a crime; rather, in both cases, it was only upon further search of those items that the police developed facts indicating the illicit nature of what was contained in

them. *See Bailey,* 412 Md. at 370, 987 A.2d 72; *Warren,* 783 So.2d at 88. *Purnell* is similarly inapplicable. The officer who discovered the keys while frisking Purnell did not have sufficient information at that time to render the keys immediately apparent as evidence of Purnell's connection to the drugs that were later found in the car that the keys unlocked.

█ The facts of the present case stand in stark contrast to those of *Bailey, Warren,* and *Purnell.* Even before initiating the frisk of Petitioner, Officer McGinnis had learned several significant facts: (1) the woman he interviewed at the scene, who perhaps out of fear declined to give her name, reported to him that Petitioner, a hacker, drove her to their present location and during the drive threatened to shoot her; (2) Petitioner did not live in the nearby area; and (3) Petitioner claimed that he did not drive to his present location and gave inconsistent explanations for how he got there. Thus, by the time Officer McGinnis felt the keys and remote in Petitioner's pants pocket, he had amassed sufficient evidence that those items, although in and of themselves innocuous, were immediately apparent to be evidence of Petitioner's involvement in hacking a short time earlier.

Petitioner grants the possibility that the facts known to Officer McGinnis at the moment he felt the keys and remote would give rise to a reasonable suspicion that those items were evidence of the crime of hacking. Petitioner insists, however, that the circumstances failed to establish a probable cause belief of that fact. We disagree.

█ The Supreme Court has explained that "the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle,* 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (internal quotation marks and citations omitted). Probable cause, moreover, is "a fluid concept," "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Id.* at 370–71, 124 S.Ct. 795

(internal quotation marks and citations omitted). Indeed, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." *Id.* at 371, 124 S.Ct. 795 (internal quotation marks and citations omitted). *See also Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (stating, in explaining what constitutes probable cause for issuance of a search warrant, that the facts and circumstances set forth in the affidavit, viewed in their totality, need only provide a *"fair probability* that contraband or evidence of a crime will be found in a particular place" (emphasis added)).

Applying the standard of probable cause to the facts of this case, it matters not that at the time Officer McGinnis felt the keys and car remote he could not know for sure that those items belonged to a vehicle Petitioner had just used as a hack. Given the totality of the circumstances, there was a fair probability that the keys and remote corresponded to that vehicle.

It likewise does not matter what object(s) the officer believed subjectively the keys might open. Rather, we consider whether a reasonable officer in Officer McGinnis's place would have had probable cause to believe that a set of keys and a car remote were evidence of hacking. *See Maryland v. Macon,* 472 U.S. 463, 470–71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." (internal citation and quotation marks omitted)); *accord Pringle,* 540 U.S. at 371, 124 S.Ct. 795 (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)); *Wengert,* 364 Md. at 90, 771 A.2d 389. Viewed from the standpoint of an objectively reasonable police officer, the facts known to Officer McGinnis at the time he conducted the frisk provided probable cause that the items he immediately discerned—merely from the sense of touch while patting down Petitioner's pants pocket—

were a set of car keys and remote belonging to the vehicle Petitioner had just used as the "hack" in which to transport the woman to their present location.

We hold, by application of the plain feel doctrine, that Officer McGinnis lawfully seized the keys and remote he touched while frisking Petitioner. With the fall of Petitioner's premise that the seizure of the keys and remote was unlawful, so too falls his argument that the handgun was the tainted fruit of that initial seizure. We therefore affirm the judgment of the Court of Special Appeals, which in turn affirmed the Circuit Court's denial of Petitioner's motion to suppress the physical evidence.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT TO BE PAID BY PETITIONER.**