76 A.3d 1143

**Bashawn Montgomery RAY**

v.

**STATE of Maryland.**

**No. 80, Sept. Term, 2012.**

Court of Appeals of Maryland.

Sept. 27, 2013.

Reconsideration Denied Oct. 18, 2013.

Nancy S. Forster (Law Offices of Nancy S. Forster, Towson, MD), on brief, for Petitioner/Cross–Respondent.

Todd W. Hesel, Asst. Atty. Gen. (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Respondent/Cross–Petitioner.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD and BELL,* JJ.

BARBERA, C.J.

We granted certiorari in this case intending to address the nature of probable cause, as that phrase is employed in Fourth Amendment jurisprudence, and to resolve what appeared to be the interesting question of whether, under the particular circumstances of this case, there existed the requisite probable cause to arrest Petitioner Bashawn Montgomery Ray. This legal matter is important to Petitioner because he links the denial of his motion to suppress evidence to his claim that the evidence, used against him at his subsequent criminal trial, was the unlawfully obtained fruit of his illegal arrest.

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

**4**

Petitioner advanced this Fourth Amendment claim before the Court of Special Appeals, which, over the State's strenuous argument to the contrary, concluded that the claim was properly before that Court for review. Petitioner enjoyed only a Pyrrhic victory, however, because the Court of Special Appeals held that the claim failed on its merits. Petitioner seeks from us a second look at the same Fourth Amendment claim, and the State resurrects the argument that the claim is not properly before the appellate courts.

We agree with the State that Petitioner's claim is not properly before the appellate courts. Petitioner waived the claim by not raising it before the Circuit Court, as required by Maryland Rule 4–252, and the record otherwise does not support the conclusion reached by the Court of Special Appeals that the claim is capable of appellate review by operation of Maryland Rule 8–131(a). In the following pages we explain why that is so.

## I.

We begin with the historical and procedural facts that form the basis of the present appeal. The incident leading to Petitioner's arrest began when the police initiated a traffic stop of a vehicle traveling on Interstate 270. Petitioner was one of three occupants, in addition to the driver. As events unfolded, one of the officers on the scene asked the occupants to exit the vehicle. The officer obtained consent from a female passenger to look inside her wallet for identification. Instead of identification, the officer discovered multiple fake credit cards. At some unspecified point thereafter, all the occupants of the vehicle, including Petitioner, were arrested. Petitioner was charged with conspiracy to commit theft, making a false statement to the police while under arrest, and related offenses.

Before trial, Petitioner filed an "Omnibus Motion" pursuant to Maryland Rule 4–252.[1] The motion included boilerplate

---

1. Maryland Rule 4–252(a) governs certain "mandatory motions," i.e., matters that are deemed waived unless timely raised by motion in the

language requesting suppression of all unlawfully obtained evidence. Relevant here, the motion alleged:

> That articles of evidence taken from the Defendant by police authorities were obtained as the result of an illegal search and seizure in violation of the Defendant's constitutional rights.

> WHEREFORE, the Defendant respectfully prays that this Honorable Court suppress all evidence obtained by police authorities as the result of an illegal search and seizure.

On the day before the scheduled hearing on the motion to suppress, Petitioner filed a "Supplement to Omnibus Motion to Suppress Evidence," requesting suppression of "all evidence obtained as a result of an illegal traffic stop and illegal detention and search on or about October 5, 2010." The supplement set forth the following allegations:

1. That on October 5, 2010, the Defendant was a passenger in a black Ford Expedition that was traveling northbound on Interstate 270. The vehicle was stopped by the Montgomery County Police at approximately 1:00 p.m. for having blue headlights and for having air fresheners hanging from the rear view mirror.

2. That the Police Officers had no reasonable articulable suspicion that a traffic violation had occurred and therefore no legal basis to stop the vehicle. *Whren v. [United States]*, 517 U.S. 806 [116 S.Ct. 1769, 135 L.Ed.2d 89] (1996), *Rowe v. State*, 363 Md. 424 [769 A.2d 879] (2001).

3. That the Defendant has standing to challenge the illegal stop of the vehicle. *Brendlin v. California*, 551 U.S. 2[4]9 [127 S.Ct. 2400, 168 L.Ed.2d 132] (2007).

4. That after the vehicle was stopped, the Officer determined that the vehicle's driver had a suspended license.

---

circuit court. Those motions include challenges to an "unlawful search, seizure, interception of wire or oral communication, or pretrial identification" and an "unlawfully obtained admission, statement, or confession." Subsection (b) sets forth the time for filing these mandatory motions in circuit court.

The driver was taken to the officer's vehicle where he was issued traffic citations. After the citations were written, the passengers in the vehicle were illegally detained. *Ferris v. State*, 355 Md. 356 [735 A.2d 491] (1999).

5. The detention of the passengers was [a] "second stop." The Officers had no independent reasonable articulable suspicion of criminal activity to detain the passengers after making the decision to issue the driver traffic citations. *Charity v. State*, 132 Md.App. 5[98, 753 A.2d 556] (2000).

Neither the omnibus motion nor the supplement specified the evidence that Petitioner sought to suppress.

At the outset of the motions hearing, Petitioner, through counsel, outlined for the court why the fraudulent credit cards and other unspecified evidence found in the vehicle should be suppressed. Petitioner first asserted that he had standing to challenge the traffic stop, then articulated the basis for his suppression motion:

[I]f the State prevails on the traffic stop issue which we believe was illegal, the issue would then become that it becomes a second stop essentially of the group of people which then leads to a search of the female down the road, and that that second stop of the passengers would also be illegal.

Two witnesses testified at the hearing, Sergeant Mark White and Officer Robert Sheehan, both of whom were called by the State. Petitioner offered no evidence, testimonial or otherwise.

Sergeant White testified that he was on patrol on Interstate 270 on October 5, 2010, when he drove past a black Ford Expedition. Sergeant White noticed that the Expedition had blue-tinted headlights instead of white [2] and there were multiple air fresheners hanging from the windshield, which he

---

2. *See* Md. Code (1957, 2012 Repl. Vol.), § 22–203(b) of the Transportation Article ("Transp.") ("headlamps shall emit white light").

believed obstructed the view of the driver.[3] Based on these perceived Code violations, Sergeant White initiated a traffic stop of the Expedition. Before approaching the vehicle, Sergeant White performed a computer search of the Expedition's license plate number, revealing that the driver's license of the registered owner of the vehicle, Antoine Norris, had been suspended.

Following that portion of Sergeant White's testimony, defense counsel asked the court to hear argument and rule on the legality of the stop. The court agreed, heard from counsel, and ruled that the traffic stop of the vehicle was lawful because Sergeant White's observation of the blue headlights provided the requisite justification to believe that the owner of the Expedition was violating a Maryland traffic law.

Sergeant White resumed his testimony, describing next that he approached the driver of the Expedition, Mr. Norris, and asked for his license and registration. Mr. Norris gave Sergeant White an expired learner's permit, after which Sergeant White asked Mr. Norris to accompany him to the police cruiser and informed Mr. Norris of his intent "to search the vehicle for items related to [Mr. Norris's] driving while suspended." Sergeant White then completed three traffic citations: two for driving with a suspended license and one for the obstructed windshield.

While Sergeant White was speaking with Mr. Norris in the police cruiser, three other officers arrived on the scene, including Officer Sheehan. There were three remaining passengers in the vehicle: an adult female in the front passenger seat, a juvenile female in the rear behind the driver's seat, and Petitioner in the rear on the passenger side. Officer Sheehan testified that, after briefly engaging the passengers, he asked them to exit the vehicle. Petitioner and the other passenger in the back seat complied immediately with Officer Sheehan's

---

**3.** *See* Transp. § 21–1104(c) ("a person may not drive a vehicle on a highway with any object, material, or obstruction so located in or on the vehicle as to interfere with the clear view of the driver through the windshield").

request, but the female in the front passenger seat, later identified as Mashea Ray,[4] did not get out of the vehicle, despite being asked twice by Officer Sheehan. Eventually, after stating that it was cold outside, Ms. Ray grabbed her jacket from the floor directly behind her seat and exited the vehicle. Officer Sheehan asked Ms. Ray if she had any weapons in her jacket, and she replied that she did not. Upon Officer Sheehan's request, Ms. Ray consented to a search of the jacket to ensure it contained no weapons. During the search of the jacket, Officer Sheehan discovered a large wallet. He testified, "I said is your identification in this wallet? She said no. I said can I search it and make sure? She said something to the effect of yeah, it's not in there." Officer Sheehan next testified:

> As soon as I opened the wallet I immediately saw a whole stack of credit cards inside the wallet that to me appeared to be fake credit cards. I started pulling them out and one by one I'd say the name on the credit card and I'd ask the female, who's this person? She said I don't know. Who's this person? I don't know. Who's this person? I don't know. So every card that I showed or took out of the wallet and asked her who these people were, she said she didn't know.

Officer Sheehan testified that Petitioner did not reach for the jacket or claim ownership of it or the wallet.

Upon completion of the testimony of the two officers, the court heard argument of counsel. Throughout the argument of both counsel, the focus remained squarely on Petitioner's claim, disputed by the State, that there occurred an unlawful second detention of the vehicle's occupants, during which the police obtained evidence that Petitioner was entitled to have suppressed.[5]

---

**4.** The transcript of the motions hearing does not reflect whether Petitioner and Ms. Ray are related.

**5.** The State offered the concession that the officers could not lawfully effectuate a search incident to arrest once Sergeant White chose to issue citations rather than arrest Mr. Norris.

The State argued that the officers did not unlawfully detain the remaining passengers after issuing the citations because the passengers would have been free to leave had the vehicle not been pulled over on Interstate 270, a controlled access highway.[6] Defense counsel disagreed, arguing that the officers unlawfully ordered Petitioner and the other passengers out of the car and detained them instead of ascertaining whether any of them had a valid driver's license and could drive the Expedition away. The following is an excerpt of the discussion that ensued:

[PROSECUTOR]: [T]he State's argument is they have to get these people out of there because we're stuck on 270, as the *Timmons* [*v. State,* 114 Md.App. 410, 690 A.2d 530 (1997),] case notes. Sometimes you're in those situations where you have something that looks like a seizure but is not actually a seizure because of the circumstances.

Once that non-seizure, if you will, occurs and the defendant is asked out of the car with the female, what happens next is a variety of consent things with the female, which we already, he has no standing to contest. That leads to what are readily apparent fraudulent credit cards. And at that point, just as if drugs had been discovered, they've got probable cause to arrest everybody.

THE COURT: Presumably, at the end of the day, there's something about what was in her purse that incriminated all of the occupants or more than one of the occupants.

\*       \*       \*

THE COURT: [Defense counsel], where are you in this?

[DEFENSE COUNSEL]: Well, I guess sort of not knowing exactly which issue to address first, I mean, my argument, which I think a lot of which the State and I are on the same page, we agree, is that this is a classic second stop

---

**6.** *See* Transp. § 21–509 (except when seeking emergency assistance, a pedestrian may not walk along or on a controlled access highway, or a ramp or access road leading to a controlled access highway).

that the officers did not have the right to perform under *Charity* and *Ferris.*

Later, when the court inquired precisely what evidence Petitioner hoped to suppress, defense counsel explained: "I want to suppress everything, things found in the car,[7] as well as what was found on [Ms. Ray], because I don't think they had the right for that second detention of the group."

As argument before the court continued, defense counsel never strayed from the contention that the evidence found on Ms. Ray and in the Expedition must be suppressed because it was the fruit of an unlawful second stop of the passengers following issuance of the citations to the driver. Counsel argued:

> [DEFENSE COUNSEL]: ... there was an illegal detention of these three is my argument.
>
> \*       \*       \*
>
> [DEFENSE COUNSEL]: The group is stopped again, is my argument, illegally, after the citation. . . .
>
> \*       \*       \*
>
> [DEFENSE COUNSEL]: ... I think what we have here is while [Sergeant White] is [explaining the ticket to the driver], he's clearly telling [Officer Sheehan], go get everybody else out. They're clearly at this point, after making that decision, after having those tickets written, it's been a decision; we're now going to get everybody else out of the car. That's the problem I have. *That's where it all becomes illegal.*
>
> And I don't think it can be saved by saying well, we couldn't have let them walk off. Right, they can't let them walk off, but if you're not in a detention type situation, if everybody is free to go, they're going to say does anybody have a good license. Yes, I do. Okay, drive away. That's what's going to happen, and we have no—and they didn't do that. They never go to that point because—and maybe I

---

7. Notably, there had been no testimony from either officer concerning what had been found in the car.

didn't make this, I guess I didn't make the argument that well—we didn't get to that point when the officers could've said does anyone have a valid license and then let the car drive off because they were all three detained. And that's when we immediately get into this whole, can I search your wallet? Can I search your jacket? And that's the problem I have. *I think it all hinges right there.*

So I would ask that anything after that point be suppressed.

(Emphasis added).

The court concluded that Officer Sheehan had the authority to order the remaining passengers out of the car while the driver was with Sergeant White and the officers "got lucky" by discovering the credit cards during the consent search. The court also indicated its concurrence with the State's concession, *see supra* note 5, that, had the police officers searched Mr. Norris's vehicle merely as a search incident to his citation for driving with a suspended license, the search would have been illegal. The court then ruled:

I think this illegal search was interrupted by the consent search of the young woman who had contraband on her, and then of course, once the police discover contraband, they're not going to ignore that. And so for reasons that I've probably articulated, perhaps ad nauseam, the motion to suppress will be denied.

## II.

On a later date, trial before the Circuit Court proceeded on an agreed statement of facts. The court found Petitioner guilty of conspiracy to commit theft of property having a value of at least $1,000 but less than $10,000 and making a false statement while under arrest. Petitioner raised several claims on appeal to the Court of Special Appeals, including that the Circuit Court erred in denying the motion to suppress evidence. In support of that argument, Petitioner relied on the theory that all the evidence obtained by the police—the counterfeit credit cards, Nordstrom shopping bags and merchan-

dise, and a statement Petitioner eventually made to the police [8]—was the fruit of his unlawful arrest.

The Court of Special Appeals first addressed the State's argument that Petitioner's unlawful arrest theory in support of suppression of the evidence was not preserved for appellate review and concluded that it was. The Court of Special Appeals explained its rationale in a footnote:

> The issue of whether law enforcement officers had probable cause to arrest appellant is preserved for appellate review because it was raised in the circuit court. Ironically, it was the prosecutor who raised the issue in the circuit court by arguing: "[A]t that point, just as if drugs had been discovered, they've got probable cause to arrest everybody." Afterward, the circuit court, ruling from the bench, endorsed the State's position by stating: "[O]nce the police discover contraband, they're not going to ignore that." That appellant did not mention probable cause while arguing before the circuit court is not relevant. Pursuant to Maryland Rule 8–131(a), to be preserved for appellate review, an issue simply needs to be "raised in or decided by the trial court," regardless of which party raises the issue.

*Ray v. State*, 206 Md.App. 309, 337 n. 13, 47 A.3d 1113 (2012) (alterations in original). The Court of Special Appeals held that the police had probable cause to arrest Petitioner under the "common enterprise" theory endorsed by *Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), and therefore any evidence that police obtained pursuant to or as the fruit of that arrest was not subject to suppression.[9] *See Ray*, 206 Md.App. at 338–41, 47 A.3d 1113.

---

**8.** We have noted that there was no testimony developed at the motions hearing concerning what evidence the police found in the Expedition, or even when they found such evidence. Neither was there any testimony at the hearing concerning Petitioner's statement to the police, after his arrest, in which he implicated himself and evidently sought to exculpate the female passengers.

**9.** The Court of Special Appeals concluded that the counterfeit credit cards were seized pursuant, not to Petitioner's arrest, but rather to Ms. Ray's consent to have her wallet searched. *Ray v. State*, 206 Md.App.

Petitioner then filed with this Court a petition for a writ of certiorari. We granted the petition to consider the following question:

> Did the Court of Special Appeals err in holding that there existed probable cause to arrest Mr. Ray under the common enterprise theory developed in *Maryland v. Pringle,* when a female passenger of the car in which Mr. Ray was also a passenger, consented to a search of her own jacket and of her own wallet found inside her jacket and police discovered counterfeit credit cards inside the wallet that had been used to purchase items later found in shopping bags inside the car?

We also granted the State's conditional cross-petition, which asks:

> Should the Court of Special Appeals have refused to address Ray's claim that he was arrested without probable cause where Ray did not challenge the legality of his arrest at the suppression hearing, and as a result, no testimony or evidence was produced on the circumstances of Ray's arrest?

## III.

██ Petitioner claims that the Circuit Court wrongly denied his motion to suppress the physical evidence and inculpatory statement to the police on the ground that all of that evidence was the product of an unlawful arrest. In that regard, he insists that the Court of Special Appeals wrongly relied on the rationale and holding of *Maryland v. Pringle* in holding that Petitioner was lawfully arrested, and that we must correct that error here. We cannot decide the merits of Petitioner's claim because, as the State argues, the claim is not properly before us for appellate review.

---

309, 337, 47 A.3d 1113 (2012). The Court further noted that "[t]he record leaves unclear whether the Nordstrom shopping bags were found before or after his arrest." *Id.* at 338 n. 16, 47 A.3d 1113.

*Maryland Rule 4–252*

Maryland Rule 4–252 governs the mandatory motions that are deemed waived unless properly raised in the Circuit Court. The text of that rule provides:

(a) **Mandatory motions.** In the circuit court, the following matters *shall be raised by motion* in conformity with this Rule *and if not so raised are waived* unless the court, for good cause shown, orders otherwise:

\*     \*     \*

(3) An unlawful search, seizure, interception of wire or oral communication, or pretrial identification;

\*     \*     \*

(e) **Content.** A motion filed pursuant to this Rule shall be in writing unless the court otherwise directs, *shall state the grounds upon which it is made,* and shall set forth the relief sought. . . . Every motion shall contain or be accompanied by a statement of points and citation of authorities.

(Emphasis added).

The purpose of Rule 4–252 is "to alert both the court and the prosecutor to the precise nature of the complaint, in order that the prosecutor have a fair opportunity to defend against it and that the court understand the issue before it." *Denicolis v. State,* 378 Md. 646, 660, 837 A.2d 944 (2003). Therefore, the word "raise," as used in subsection (a) of Rule 4–252, is properly defined as meaning "[t]o bring up for discussion or consideration; to introduce or put forward." Black's Law Dictionary 1373 (9th ed. 2009). For example, "the party raised the issue in its pleading." *Id. See also* Merriam–Webster's Collegiate Dictionary 1028 (10th ed. 1999) (defining "raise" as "to bring up for consideration or debate" and offering the phrase "raise an issue" as an example). It is clear from Petitioner's motion to suppress and from what he did—and did not—argue at the hearing on the motion, that Petitioner did not comply with the dictate of Rule 4–252 that he raise the claim he now asks us to resolve.

We begin with the omnibus motion, in which Petitioner sought suppression of unidentified evidence claiming merely "[t]hat articles of evidence taken from the Defendant by police authorities were obtained as the result of an illegal search and seizure in violation of the Defendant's constitutional rights." The omnibus motion contained no supporting factual allegations, legal arguments, or citations to authority. In the words of Rule 4–252(e), the motion did not "state the grounds upon which" suppression was sought. *See Denicolis,* 378 Md. at 660, 837 A.2d 944 (describing this species of omnibus motions as those that "seek[ ] a panoply of relief based on bald, conclusory allegations devoid of any articulated factual or legal underpinning"); *Phillips v. State,* 425 Md. 210, 217 n. 4, 40 A.3d 25 (2012) (cautioning that "a motion that fails to provide either a factual or legal basis for granting the requested relief should not be granted"). We therefore reject Petitioner's suggestion that the omnibus motion sufficed to put at issue the specific ground for suppression of evidence that it was the fruit of an unlawful arrest.

Petitioner filed a written supplement to the omnibus motion on the day before the motions hearing. In that motion, Petitioner offered two arguments for suppression of evidence and cited authority for each:

(1) "That the Police Officers had no reasonable articulable suspicion that a traffic violation had occurred and therefore no legal basis to stop the vehicle. *Whren v. [United States ],* 517 U.S. 806 [116 S.Ct. 1769, 135 L.Ed.2d 89] (1996), *Rowe v. State,* 363 Md. 424 [769 A.2d 879] (2001)."

(2) "After the citations were written, the passengers were illegally detained. *Ferris v. State,* 355 Md. 356 [735 A.2d 491] (1999). . . . The detention of the passengers was [a] "second stop." The Officers had no independent reasonable articulable suspicion of criminal activity to detain the passengers after making the decision to issue the driver traffic citations. *Charity v. State,* 132 Md.App. 5[98, 753 A.2d 556] (2000)."

This motion satisfies Rule 4–252(e), but the grounds stated in it do not come close to raising unlawful arrest as a ground for suppression of the evidence, and Petitioner does not argue to the contrary.

Neither did Petitioner comply with the dictates of Rule 4–252(e) by orally injecting the unlawful arrest claim into the motions hearing. Not once during the hearing, which covers nearly 90 pages of transcript, did defense counsel even utter the terms "probable cause" or "arrest" when discussing Petitioner.[10] Indeed, at the outset of the hearing, while stating his case for suppression, and throughout the hearing, while examining the police witnesses and later arguing to the court, Petitioner did not deviate from the two-part illegal stop/unlawful second "detention" of the passengers theory—the same theory for suppression of evidence he set forth in the supplemental motion.

Notwithstanding that he never advanced before the motions court, in any way, shape, or form, the unlawful arrest claim he now asserts, Petitioner believes his case is akin to *Phillips*, in which we deemed it appropriate to address the merits of an issue that was not specifically identified at the Circuit Court level as a ground for suppression of evidence. We do not agree. In that case, the defendant Phillips's omnibus Rule 4–252 motion sought suppression of illegally obtained statements and confessions made by him, but offered "[n]o facts supporting that allegation and no points or authorities." *Id.* at 216, 40 A.3d 25. On appeal, Phillips asked this Court to consider whether his statements had been obtained in violation of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which dictates that, if an accused invokes his right to have counsel present, police questioning must cease "until counsel is made available to him, unless the accused himself initiates further communication, exchanges, or conversations

---

10. The record discloses that defense counsel once mentioned the words probable cause and once mentioned the word arrest. Yet in neither instance did counsel connect those words to Petitioner, but rather to the female passenger and the driver.

with the police." 451 U.S. at 484–85, 101 S.Ct. 1880. The State argued that the issue was not preserved for appellate review, and we noted that *Edwards* was not cited in the written motion or during the court proceeding. *Phillips,* 425 Md. at 216–17, 40 A.3d 25. But upon review of the hearing, it was "clear from the entire context that counsel and the court understood [compliance with *Edwards* ] to be the issue." *Id.* at 217, 40 A.3d 25.

At the outset of the *Phillips* motions hearing, "defense counsel advised the court that [Phillips] 'was interviewed by the police and he asked for a lawyer, and it is in not honoring that request that brings us to court this morning.'" *Id.* The prosecution also "noted that the issues were whether [Phillips] had initiated the conversation and whether doing so constituted a waiver of his right to counsel." *Id.* And the court "ruled that [Phillips] had initiated the conversation that led to the inculpatory statements and knew what he was doing." *Id.* The court and the parties were clearly aware of the argument advanced by Phillips on appeal. Consequently, we were able to address the merits of his claim.

Petitioner's case is quite different. Petitioner did not raise the issue of probable cause to arrest in his written motion or at the hearing, and he did not otherwise allude to that theory for suppression of the evidence. It is so that the prosecutor mentioned during argument that, at the point the counterfeit credit cards were found, "just as if drugs had been discovered, they've got probable cause to arrest everybody," and the court appeared to agree. But that point was not pressed by the prosecutor, and, notably, Petitioner did not dispute the prosecutor's words. Moreover, the court did not rely on a search incident to arrest theory when ruling on the motion.

This case is more akin to *Miller v. State,* 380 Md. 1, 843 A.2d 803 (2004), than to *Phillips.* Miller filed a pre-trial omnibus motion in which he asked, among other things,

> that all evidence seized from his person "at or about the time of the arrest" be suppressed because such evidence "was seized unlawfully, absent probable cause, and in viola-

tion of the United States Constitution, the Maryland Declaration of Rights and other legal rights of this Defendant." *Id.* at 49, 843 A.2d 803. When Miller argued on appeal that he had been arrested without probable cause, we agreed with the State that the argument had been waived under Rule 4–252. *Id.* We noted that "Miller's omnibus motion gave no details supporting his bald contention that evidence was seized from him 'at or about the time of the arrest' without probable cause. Nor ... did Miller ever pursue the matter at the hearing on the motion." *Id.* As a result, we held that, "[a]lthough he pressed his complaint about evidence seized during a search of the apartment, pursuant to a warrant, he never mentioned, and thus effectively abandoned, any contention that the arrest itself, or any search incident to it, was without probable cause." *Id.*

With the exception of its decision in the present case, recent opinions of the Court of Special Appeals are in accord with the principle of law that a claim for suppression of evidence must be advanced *and* litigated at the trial court level in order to avoid waiver under Maryland Rule 4–252. *See Joyner v. State,* 208 Md.App. 500, 519, 56 A.3d 787 (2012) (refusing to consider, because it was raised for the first time on appeal and thus waived under Maryland Rule 4–252, appellant's argument seeking suppression of his statements to police on the ground that the *Miranda* warnings were infirm); *Carroll v. State,* 202 Md.App. 487, 513, 32 A.3d 1090 (2011), *aff'd on other grounds,* 428 Md. 679, 53 A.3d 1159 (2012) (stating that, "if a defendant fails to raise a ground seeking suppression of evidence, which is required to be raised pre-trial by Rule 4–252, the defendant has waived his or her right to appellate review of that issue"). In *Joyner,* the Court of Special Appeals explained:

> In the instant case, appellant failed to raise at the motions hearing the specific argument that Officer McConnell did not advise him that he would be entitled to appointed counsel at no expense.... Accordingly, appellant's contention is not preserved for appellate review because appellant raises this argument for the first time at the appellate

level. . . . [W]e conclude that appellant's specific challenge to the admission of his statement has been waived.

208 Md. at 519, 119 A.2d 430.

Similarly, in the present case, Petitioner filed, and later supplemented, a suppression motion, and argued zealously for suppression at the hearing before the motions court. But his arguments in support of suppression concerned only the legality of the stop of the vehicle and the detention of him and the other passengers after the citations were issued to the driver. Petitioner did not set forth, before or during the motions hearing, the specific grounds, facts, and arguments he now asserts on appeal, i.e., that the officers lacked probable cause to arrest him.

In sum, Maryland Rule 4–252 dictates that Petitioner, by failing to advance before the Circuit Court the theory that his unlawful arrest requires suppression of all evidence that was the fruit of that unlawful arrest, waived the right to have that claim litigated on direct appeal.

### Maryland Rule 8–131(a)

██ Petitioner contends that, even if the probable cause argument is deemed waived under Maryland Rule 4–252, it is nonetheless ripe for appellate review under Maryland Rule 8–131(a) because it was "raised in" and "decided by" the trial court. The Court of Special Appeals sided with Petitioner, noting that the prosecutor had "raised" the issue by commenting "at that point, just as if drugs had been discovered, they've got probable cause to arrest everybody," and the motions court "endorsed" it by observing "once the police discover contraband, they're not going to ignore that." *Ray*, 206 Md.App. at 337 n. 13, 47 A.3d 1113. We disagree with our colleagues' application of Maryland Rule 8–131(a) to this case.

Maryland Rule 8–131(a) provides:

**Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial

court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

Not one of the operative terms of the Rule is implicated in this case. As the text states, the "issue" must "plainly appear" by the record to have been "raised in" the trial court or "decided by" the trial court. Neither option in the slightest, let alone "plainly," appears in the record.

Petitioner did not "raise," before or during the motions hearing, the argument that the police lacked probable cause to arrest him. Neither, for that matter, did he attempt to demonstrate, through cross-examination of the State's witnesses or testimony of witnesses on his behalf, either precisely when in the sequence of events he was arrested, or what evidence police obtained as a result of the arrest.

Petitioner argues, and the Court of Special Appeals decided, that, notwithstanding Petitioner's silence on the subject, the probable cause "issue" was "raised" by the prosecutor when he observed:

Once that non-seizure, if you will, occurs and the defendant is asked out of the car with the female, what happens next is a variety of things with the female, which we already [determined] he has no standing to contest. That led to what are readily apparent fraudulent credit cards. And at that point, just as if drugs had been discovered, *they've got probable cause to arrest everybody.*

The prosecutor's words did not "raise" the probable cause question for consideration and debate by the parties, as we have defined the term. Perhaps more importantly, there was no probable cause "issue" put into play here. An "issue" is "a point in dispute between two or more parties." Black's, *supra,* at 907. Alternatively, an "issue" may be a "concern" or "problem" or "the point at which an unsettled matter is ready for a decision." Webster's, *supra,* at 665. Defense counsel

never contested the prosecutor's comment that, when police placed Petitioner under arrest—a moment in time that is not identified in the record—the police had the requisite probable cause to make the arrest. Because the lawfulness of Petitioner's arrest was not disputed, it did not become an issue as the term is contemplated by Rule 8–131(a).

Neither did the motions court "decide" the lawfulness of Petitioner's arrest when the court made the following italicized observation:

[PROSECUTOR]: ... And at that point, just as if drugs had been discovered, they've got probable cause to arrest everybody.

THE COURT: Presumably, at the end of the day, *there's something about what was in her purse that incriminated all of the occupants* or more than one of the occupants.

(Emphasis added). Nor the did the court "decide" the issue when it wondered:

[DEFENSE COUNSEL]: ... You don't have to take everybody back to the police station. If a car's broken down and there's one person, they could ride with the tow truck. If there's three people and someone has a valid—odds are, someone's got a valid license.

THE COURT: Well, we're missing a point. When we get the woman out of the car and she's got all these credit cards, *that's a problem, isn't it?*

(Emphasis added). And the court did not "decide" the issue of the lawfulness of Petitioner's arrest when the court ruled:

I think this illegal search was interrupted by the consent search of the young woman who had contraband on her, and then of course, *once the police discover contraband, they're not going to ignore that.* And so for reasons that I've probably articulated, perhaps ad nauseam, the motion to suppress will be denied.

(Emphasis added).

In the context of Rule 4–252, the term "decide" means "to make a final choice or judgment about"; "to select as a course

of action"; or "to infer on the basis of evidence." Webster's, *supra,* at 322. The term "implies previous consideration of a matter causing doubt, wavering, debate, or controversy." *Id.* There is no indication that the motions court was "considering" or making any sort of "judgment" about whether the police possessed the requisite probable cause to arrest Petitioner at the time they did so, much less what evidence the police obtained pursuant to, or following from, the arrest that would be subject to suppression were the arrest not supported by probable cause.

In a final attempt to secure our review of his unlawful arrest claim, Petitioner asks that we exercise our discretion to address the merits of the claim, pursuant to Maryland Rule 8–131(a). For this Court to attempt a resolution of the merits of Petitioner's claim, on the basis of the record before us, would be an abuse of our discretion.

"The primary purpose of Rule 8–131(a) is to ensure fairness for all parties and to promote the orderly administration of law." *Jones v. State,* 379 Md. 704, 713–14, 843 A.2d 778 (2004). Although the Rule clearly authorizes an appellate court to address an unpreserved issue, we have warned that "[s]uch prerogative to review an unpreserved claim of error . . . is to be rarely exercised and only when doing so furthers, rather than undermines, the purposes of the rule." *Robinson v. State,* 410 Md. 91, 103–04, 976 A.2d 1072 (2009). *See also Conyers v. State,* 354 Md. 132, 151, 729 A.2d 910 (1999) ("We usually elect to review an unpreserved issue only after it has been thoroughly briefed and argued, and where a decision would (1) help correct a recurring error, (2) provide guidance when there is likely to be a new trial, or (3) offer assistance if there is a subsequent collateral attack on the conviction."). In particular, "[t]his discretion should be exercised only when it is clear that it will not work an unfair prejudice to the parties or to the court." *Jones,* 379 Md. at 714, 843 A.2d 778. We have previously offered an example of such an unfair prejudice:

For example, with respect to the parties, a new argument presented by the State would work unfair prejudice to a criminal defendant if its validity depended upon evidence not adduced at the trial level. In such a case, an appellate court's consideration of the argument would most likely be an abuse of its discretion under Rule 8–131(a) because it would be manifestly unfair to the defendant who had no opportunity to respond to the argument with his own evidence to the contrary.

*Id.* (citations omitted).

With the exception of the reversal of roles, this example from *Jones* is not at all different from the situation at hand. Petitioner wishes us to address on appeal an issue that was not litigated at the trial level, thus depriving the State of any opportunity to introduce additional evidence or advance a new theory in opposition to Petitioner's argument. We have advised appellate courts to consider precisely that concern before exercising discretion pursuant to Rule 8–131(a):

It is a discretion that appellate courts should rarely exercise, as considerations of both fairness and judicial efficiency ordinarily require that all challenges that a party desires to make to a trial court's ruling, action, or conduct be presented in the first instance to the trial court so that (1) a proper record can be made with respect to the challenge, and (2) the other parties and the trial judge are given an opportunity to consider and respond to the challenge.

*Chaney v. State*, 397 Md. 460, 468, 918 A.2d 506 (2007). The case before us is deficient in both regards.

"In reviewing the denial of a motion to suppress evidence allegedly seized in violation of the Fourth Amendment, we are confined to the record developed at the suppression hearing." *McCracken v. State*, 429 Md. 507, 515, 56 A.3d 242 (2012). In this case, the record from the motions hearing tells us very little about the circumstances of Petitioner's arrest. The testimony of the State's witnesses focused on the events leading up to and including the discovery of the credit cards in Ms. Ray's wallet. Although both officers mentioned that the

vehicle's occupants were all transported to the police station, the officers did not say when, or even whether, any of the passengers were arrested.

We know, of course, that Petitioner was arrested at some point and was tried and convicted of charges that arose out of the incident that began with the traffic stop on Interstate 270. But the hearing on the motion to suppress evidence tells us nothing that we would need to know in order to decide: (1) when petitioner was arrested; (2) what the police had reason to suspect at the moment of arrest; (3) whether that suspicion rose to the level of probable cause to believe Petitioner had committed or was committing a crime; and (4) what evidence the police obtained upon Petitioner's arrest or as the fruits of it. Not one of those facts can be known from the record we have before us. We therefore should not consider Petitioner's claim that he was unlawfully arrested, much less that he was entitled to suppression of certain evidence as the result. For that reason as well, we offer no comment on the correctness of the Court of Special Appeals's reasoning and legal conclusion about the merits of Petitioner's claim of unlawful arrest.

## IV.

Petitioner has presented in this Court no claim that can be resolved in his favor. By operation of Rule 4–252, he has waived the right to raise on appeal that he was entitled to have the Circuit Court suppress certain evidence on the ground that the evidence was the product of an unlawful arrest. Neither is Petitioner's claim preserved for appellate review by operation of Rule 8–131(a). The claim was not raised or decided in the Circuit Court and the record does not support the proper exercise of appellate court discretion to overlook the lack of preservation of the claim.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

GREENE and ADKINS, JJ., dissent.

ADKINS, J., dissenting, which GREENE, J. joins.

I agree with the Majority that Petitioner waived his claim by not raising it before the Circuit Court. *See* Md. Rule 8–131(a). Thus, I agree that the Court of Special Appeals erred in concluding that the matter was a proper subject of appellate review. Nonetheless, I dissent because I disagree with the Majority's failure to vacate the Court of Special Appeals' holding about the merits of Ray's Fourth Amendment claim— a decision that rests on an expanded and worrisome interpretation of *Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).

In its opinion, the Majority concludes:

[T]he hearing on the motion to suppress evidence tells us **nothing that we would need to know in order to decide:** (1) when petitioner was arrested; (2) what the police had reason to suspect at the moment of arrest; (3) **whether that suspicion rose to the level of probable cause to believe Petitioner had committed or was committing a crime[.]** (Emphasis added.)

Maj. Op. at 24, 76 A.3d at 1156. Yet the Majority affirms the Court of Special Appeals, offering "no comment on the correctness of the Court of Special Appeals' reasoning[.]" *Id.* This means that the Court of Special Appeals' holding will be applied by trial courts until the next time this Court decides a case applying *Pringle* in a similar context. The Court of Special Appeals' opinion, however, relies on a novel interpretation of *Pringle* that is inconsistent with its rationale and unsupported by precedent.

The finding of probable cause to arrest and search in *Pringle* was predicated on the underlying nature of the contraband and criminal enterprise in question. In that case, officers found $763 in rolled-up bills and five glassine baggies of cocaine in a car with a driver and two passengers. *Pringle,* 540 U.S. at 371–72, 124 S.Ct. at 800. The Court used these facts to conclude that contraband found "indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to

furnish evidence against him." *Pringle,* 540 U.S. at 373, 124 S.Ct. at 801. This implies a two-step analysis for determining whether other car passengers are in a common enterprise with the individual to whom contraband is attributed. *See id.* The first step is to determine what enterprise the quantity and type of contraband evidences. *Id.* The second step is to determine if a person engaged in the enterprise would be unlikely to admit an innocent person. *Id.*

Regarding the first step, the contraband here was a stack of credit cards found in a wallet held in the coat pocket of co-passenger, Mashea Ray. *Ray v. State,* 206 Md.App. 309, 318, 47 A.3d 1113, 1117 (2012) ("Officer Sheehan testified that, he 'saw a whole stack of credit cards inside the wallet that to [him] appeared to be fake credit cards. [He] starting [sic] pulling them out and one by one[, and he would] say the name on the credit card and [ ] ask [Mashea], who's this person?' According to Officer Sheehan, every time that he showed a credit card to Mashea, 'she said she didn't know' who the person was whose name was on the credit card"). The officer on the scene determined that these were counterfeit credit cards. The enterprise suggested, then, is possession of a counterfeit credit card. Md.Code (2002), § 8–205(b)(3)(ii) of the Criminal Law Article ("A person may not, with the intent to defraud another transfer or possess ... a falsely embossed credit card with knowledge that the credit card was falsely made or falsely embossed").

The second step is to determine whether a person engaged in the enterprise would be unlikely to admit an innocent person to the place of the criminal enterprise. Courts have, based on the nature of the underlying enterprise, found that some criminal acts did not pass the "unlikely to admit an innocent person" test. *See Perkins v. U.S.,* 936 A.2d 303, 308 (D.C.2007) (deciding to "not ... infer a common enterprise between the driver and the passenger in the case at bar; that is, we would not say that one illegally possessing an open container of malt liquor in his car would be unlikely to admit an innocent person as a passenger"); *In re T.H.,* 898 A.2d 908, 914 (D.C.2006) (holding that "the presence of fireworks in a

vehicle—particularly within days of the Fourth of July—is not so 'obviously criminal' as to make the driver of the SUV 'unlikely to admit an innocent person with the potential to furnish evidence against him' " (citations omitted)).

Here, Mashea Ray was suspected of the possession of fake credit cards. Although this crime is more serious than the previous two examples, it still does not qualify as a crime that justifies the presumption that such a person would be unlikely to admit an innocent party to her enterprise. *Contra Pringle*, 540 U.S. at 373, 124 S.Ct. at 801. Unlike drugs, which are obviously criminal in their mere appearance, multiple credit cards in a concealed wallet, irrespective of their provenance, are not obviously criminal. Unlike drugs, credit cards are normally kept inside a wallet, and are, thus, concealed. Moreover, possessing or using multiple payment cards is not unusual. *See, e.g.*, Kevin Foster, et al., *The 2009 Survey of Consumer Payment Choice*, Public Policy Discussion Paper No. 11–1 (Federal Reserve Bank of Boston, Boston, MA), 2011 at 13 (stating that "the average adopter of payment cards had 1.3 debit cards, 3.7 credit cards and 2.3 prepaid cards").

Even when credit cards are fraudulently used to shop for goods, the only persons involved in the transaction are the fraudster and the store personnel who are defrauded. No shopping companion (or person in the car) needs to be aware of the fraudulent nature of the cards in order to facilitate the fraud. Using or selling illicit drugs, on the other hand, often requires a network of people aware of the criminal enterprise, particularly when the quantity is significant, as were the five glassine baggies in *Pringle*. *See Pringle*, 540 U.S. at 372, 124 S.Ct. at 800. It is the highly unusual case that one person would engage in dealing a large quantity of drugs without the involvement of those close by. The *modus operandi* of a typical drug dealer was discussed in a federal case as follows:

[The police expert witness] testified that the typical drug buy in the Harlem area involved two to five people. As a result of frequent police sweeps, Harlem drug dealers were becoming so cautious that they employed

> people who act as steerers and the steerer's responsibility is basically to determine whether or not you are actually an addict or a user of heroin and they are also used to screen you to see if there is any possibility of you being a cop looking for a bulge or some indication that would give them that you are not actually an addict. And a lot of the responsibility relies [sic] on them to determine whether or not the drug buy is going to go down or not.

*U.S. v. Brown*, 776 F.2d 397, 400 (2d Cir.1985) (quoting testimony of police expert witness). Hence, the presumption in Pringle makes sense when the kind of contraband is narcotics and the quantity is significant.

At the time that Bashawn Ray was arrested, the police knew only that Mashea Ray, his co-passenger,[1] possessed seemingly fraudulent credit cards. Unlike *Pringle*, where no one would acknowledge possession of the drugs, here, Mashea Ray picked up "her jacket from the floor that was directly behind her seat" as she exited the car, and explicitly acknowledged the wallet as her own. *Compare Pringle*, 540 U.S. at 372, 124 S.Ct. at 800, *with Ray*, 206 Md.App. at 317, 47 A.3d at 1117. There was no evidence to support an inference that other persons in the car were involved in an enterprise to use the credit cards fraudulently. Thus the second analytical prong of *Pringle* is not satisfied, and there was no probable cause to arrest Mr. Ray.

In its ruling, the Court of Special Appeals, in one broad sweep concluded that any criminal act by an automobile occupant would trigger the *Pringle* rule, simply saying that "[c]riminal statutes govern the possession of both counterfeited credit cards and controlled dangerous substances." *Ray*, 206 Md.App. at 340, 47 A.3d at 1131. Based on this alone, it concluded that the credit cards in Mashea's wallet met the *Pringle* standard of showing that all occupants were likely engaged in an enterprise into which a perpetrator would be unlikely to admit an innocent person. *Id.* In so doing, the

---

1. There was no evidence as to whether Petitioner and Mashea Ray were related.

intermediate appellate court announced and applied a different standard for the arrest of persons in cars, one which assumes that *all* indicia of criminal activity found in a car will be attributed to each and every passenger unless an occupant can prove that the object "belong[s] to a unique class of contraband whose possession cannot be attributed to more than one person." *Ray*, 206 Md.App. at 341, 47 A.3d at 1131. To extend the presumption in such a way would be an appreciable, and I submit, unjustified expansion of *Pringle*, reaching circumstances neither contemplated in the ruling nor consonant with its motivating considerations. Indeed, it renders riding in a car with other people a rather hazardous occupation.[2] Such a change risks imperiling the protections accorded all persons from unwarranted arrest guaranteed by the Fourth Amendment.

In sum, the Majority has correctly determined that Mr. Ray's appeals were not properly preserved. It has erred, I submit, by inexplicably refusing to vacate an improper and worrisome discussion of *Pringle*. For this reason, I most respectfully dissent.

Judge GREENE authorizes me to state that he shares the views set forth in this dissenting opinion.

---

2. For example, Court of Special Appeals' rule could result in the following scenario. The president of her high school class and first-chair violin is being driven to an orchestra recital by her parent. The parent then picks up a fellow student who deposits his flute case by the violinist's feet. Unbeknownst to the violinist, the flautist has fifty counterfeit dollar bills in his flute case. The parent is then stopped by a traffic officer due to a broken taillight and consents to a search of the vehicle. The officer then receives permission from the flautist to open his case and finds the counterfeit currency. Applying the Court of Special Appeals' rationale, because counterfeit money does not "belong to a unique class of contraband whose possession cannot be attributed to more than one person," it would constitute probable cause to arrest the violinist, a seemingly unfair and undesirable result. *Ray v. State*, 206 Md.App. 309, 341, 47 A.3d 1113, 1131 (2012).